GARY SHUSTER, CSB 162379
gary@shuster.com
2301-1228 Marinaside Cr.
Vancouver, British Columbia V6Z 2W4
Canada
Telephone: (604) 417-5002
Facsimile: (559) 272-2222

*Attorney for Defendant Cartesian Theatre Corp.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| COHESITY, INC, <br><br> Plaintiffs, <br><br> v. <br><br> CARTESIAN THEATRE CORP., and DOES 1 - 25, <br><br> Defendants. | Case No. 4:24-CV-09104-JST <br><br> **DEFENDANT CARTESIAN THEATRE CORP.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS [FRCP. 12(B)(1), FRCP. 12(B)(2), FRCP. 12(B)(3), FRCP. 12(B)(6)] OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT FRCP 12(e) OR IN THE ALTERNATIVE FOR A STAY OR IN THE ALTERNATIVE TO STRIKE, FRCP. 12(e)** <br><br> **Date: September 11, 2025** <br> **Time: 2:00 p.m.** <br> **Place: Courtroom 6 (Via Video Conference)** <br> **Judge: Hon. Jon. S. Tigar** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

# TABLE OF CONTENTS

I. INTRODUCTION: ...............................................................................................................1

II. FEDERAL RULE OF EVIDENCE 408 AND CANADIAN SETTLEMENT PRIVILEGE:.......1

III. LEGAL STANDARD:.......................................................................................................2

IV. FACTS:..............................................................................................................................5

V. DISCUSSION ....................................................................................................................10

    A.    The Court Lacks Subject Matter Jurisdiction (12(b)(1)): ......................................10

    B.    The Court Lacks Personal Jurisdiction Over CT (12(b)(2)): ................................13

    C.    The Court Should Dismiss Under Rule 12(b)(3) and the Doctrine of *Forum Non Conveniens* Because CT Cannot Present Its Sole Witness Live in This District: ...........................................18

    D.    The Court Should Dismiss Under Rule 12(b)(6) Because Compliance With Rule 9 Requires Key Allegations to be Pled With Specificity (in the Alternative, This Court Should Order a More Definite Statement, Fed. R. Civ. P. 12(e)): ..................................................................21

VI. CONCLUSION: ................................................................................................................24

1

**Cases**

2  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)..................................................... 5

3  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ...................................................................... 10

4  *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 851 (9th Cir. 1993)................................... 3

5  *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996) ............................................. 3

6  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................................. 4

7  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................................... 4

8  *Bellatrix Exploration Ltd. v. Penn West Petroleum Ltd.*, 2013 ABCA 10, at para. 24 (CanLII ) ..... 1

9  *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) ...................................................................... 14

10  *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264–65 (2017) ................................ 15

11  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ........................................................ 14

12  *Calder v. Jones*, 465 U.S. 783, 789–90 (1984) ........................................................................... 14

13  *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ................................................................... 20

14  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ....................... 2

15  *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014)................................................................ 14

16  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ........................... 3

17  *Delchev v. R.*, 2012 ONSC 2094, at para. 19 (CanLII)................................................................. 1

18  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947) ................................................................... 20

19  *Hansraj v. Ao*, 2002 ABQB 385, at para. 13 (CanLII) ................................................................. 1

20  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ............................................... 4

21  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)................................................................ 3

22  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ................................................ 22

23  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) ................................................... 4

24  *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664–65 (9th Cir. 2009).......... 18

25  *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)......................................................................... 20

26  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)......................................... 2, 5, 12

27  *Moletech Glob. Hong Kong Ltd. v. Pojery Trading Co.*, No. 4:09-CV-00027-SBA, 2009 WL

28

3151147 (N.D. Cal. Sept. 25, 2009) ........................................................................ 18

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ........................................................... 4

*Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) ...................... 3

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 (1981) ............................................. 18, 20

*Principal Life Ins. Co. v. Robinson*, 394 U.S. 665, 669 (9th Cir. 2005) .................................. 10, 12

*Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) ................................. 2

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) .............................. 2

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) ..................... 3, 14

*Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) ........................................... 4, 21

*Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) 13

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–35 (2007) ................. 18, 20

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ............. 2

*Thrifty Rent-A-Car Sys., Inc. v. Thrift Cars, Inc.*, 639 F. Supp. 750, 754 (D. Mass. 1986) ........... 12

*Twitter, Inc. v. Holder*, 183 F. Supp. 3d 1007, 1012–13 (N.D. Cal. 2016) ......................... 12

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ................................ 4, 5, 22

*Walden v. Fiore, 571 U.S. 277, 285–86 (2014)* ....................................................... 14

*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ................................................. 2

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ............................................... 12

*Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisémitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) ..................................................................................................... 14

*York Region Condominium Corp. No. 890 v. Market Village*, 2019 ONSC 4835, at para. 33 (CanLII) ..................................................................................................... 1

**Statutes**

15 U.S.C. § 1063(a) ................................................................................... 7

15 U.S.C. § 1072 ...................................................................................... 11

15 U.S.C. § 1115 ...................................................................................... 11

15 U.S.C. § 1115(b)(5) ................................................................................ 11

15 U.S.C. §§ 1057 ........................................................................................................ 11

28 U.S.C. § 1391 ............................................................................................................ 3

28 U.S.C. § 1406(a) ........................................................................................................ 3

28 U.S.C. §§ 2201–2202 ................................................................................................ 1

8 U.S.C. § 1182(a)(2)(A)(i)(II) ...................................................................................... 18

U.S. Const. art. III, § 2 ............................................................................................. 1, 24

**Rules**

Fed. R. Civ. P. 11 ..................................................................................................... 1, 11

Fed. R. Civ. P. 12(b)(2) ........................................................................................ 1, 3, 13

Fed. R. Civ. P. 12(b)(3) .......................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 3, 21

Fed. R. Civ. P. 12(e) ..................................................................................................... 22

Fed. R. Civ. P. 43 .......................................................................................................... 20

Fed. R. Civ. P. 8 ...................................................................................................... 5, 22

Fed. R. Civ. P. 9(b) .................................................................................................. 4, 22

Fed. R. Evid. 408 ............................................................................................................ 1

**Regulations**

11.18(b) .......................................................................................................................... 7

37 C.F.R. § 2.102(a) ....................................................................................................... 7

37 C.F.R. §§ 2.102 ......................................................................................................... 7

Trademark Trial & Appeal Bd. Manual of Procedure § 206.01 ..................................... 7

# I. INTRODUCTION:

Defendant Cartesian Theatre ("CT") brings this motion to dismiss the Complaint on the basis that (a) Jurisdiction does not exist under 28 U.S.C. §§ 2201–2202 or U.S. Const. art. III, § 2 as there is no actual controversy for Declaratory Judgment Act purposes, and no case or controversy for Article III purposes Fed. R. Civ. P. 12(b)(1); (b) there is no personal jurisdiction over Cartesian Theatre Corp. ("CT") (Fed. R. Civ. P. 12(b)(2)); (c) there is no proper venue for a Canadian corporation with a principal unable to travel to the United States for trial (Fed. R. Civ. P. 12(b)(3))[1]; and (d) the allegations fail to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)). In the alternative, the motion seeks a more definite statement and/or a stay.

There is a pending Canadian Federal Court case, *Cartesian Theatre Corp. v Cohesity, Inc.*, Court No T-2636-24 ("Canadian Proceeding"), commenced prior to this one on October 7, 2024, regarding "resolving use and registration issues in Canada under Canadian law." Joint Case Mgmt Stmt 6:26 – 28, 7:5 - 14 (ECF 36); Declaration of Polina Furtula ("Furtula Decl.") ¶¶ 3 - 8. As the Declaration of Kip Warner ("Warner Decl.") and exhibits thereto show, all the communications at issue in the Complaint (many of which are drawn from Canadian settlement talks) are restricted to enforcement of Canadian rights.

# II. FED. R. EVID. 408, THE CANADIAN SETTLEMENT PRIVILEGE AND THE CANADIAN PROCEEDING:

This case underscores the tension between US and Canadian law when a declaratory relief action about the same acts is filed while an existing Canadian Proceeding is already underway. Under Canadian law, settlement communications are considered privileged, and a waiver may be accomplished only by both parties agreeing to do so. *Bellatrix Exploration Ltd. v. Penn West Petroleum Ltd.*, 2013 ABCA 10, at para. 24 (CanLII ); *Hansraj v. Ao*, 2002 ABQB 385, at para. 13 (CanLII); *Delchev v. R.*, 2012 ONSC 2094, at para. 19 (CanLII); *York Region Condominium Corp. No. 890 v. Market Village*, 2019 ONSC 4835, at para. 33 (CanLII). Under *Rhoades v. Avon Prods.,*

---

[1] Counsel for CT raises this argument in favor of establishing new law as permitted by Fed. R. Civ. P. 11.

*Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007), by contrast, Federal Rule of Evidence 408 permits use of settlement communications "to satisfy the jurisdictional requirements of an action for declaratory relief." Because the settlement communications revealed in the Complaint were mischaracterized and had fragmentary portions taken out of context in a way we assume was inadvertently misleading, CT is forced to pick between forfeiting this case by refusing to waive settlement privilege under Canadian law or using otherwise privileged communications to rebut Cohesity's unilateral decision to waive the privilege. Because the allegations about the contents of the settlement talks are already in the public record, CT has elected to respond substantively. CT treats this as a compelled disclosure and does not voluntarily agree to waive the Canadian privilege. Should this Court determine that the pleadings should be sealed to preserve comity with Canada, CT does not object.

The Canadian case is in a more advanced stage, as it has completed the pleadings stage. Furtula Decl. ¶ 8. Pretrial discovery is underway. Furtula Decl. ¶¶ 9 – 11, 14 – 15.

### III. LEGAL STANDARD:

Fed. R. Civ. P. 12(b)(1): In a challenge to subject matter jurisdiction, the plaintiff bears the burden of proof. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In a factual challenge such as this one, the court may look beyond the Complaint to consider extrinsic evidence such as declarations, correspondence, and other documents. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). No presumption of truthfulness attaches to the plaintiff's allegations, and the party invoking jurisdiction bears the burden of proving that the court has subject matter jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

In the context of a declaratory judgment action, the plaintiff must show that a "definite and concrete" controversy exists that is "real and substantial," not hypothetical or abstract. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). The alleged dispute must be of "sufficient immediacy and reality" to warrant judicial intervention. *Shell Gulf of Mex., Inc. v. Ctr. for Biological Diversity*, 771 F.3d 632, 635 (9th Cir. 2014). In addition to Fed. R. Civ. P. 12(b)(1), we seek a dismissal on the basis that there is no

1    Article III case or controversy, precluding any exercise of federal judicial jurisdiction.

2      <u>Fed. R. Civ. P. 12(b)(2)</u>: The plaintiff bears the burden of establishing that personal

3    jurisdiction exists. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004).

4    The Court may consider evidence presented in affidavits to assist in its determination and may order

5    discovery on the jurisdictional issues. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280,

6    1285 (9th Cir. 1977). Where, as here, the defendant is a foreign entity, the Due Process Clause

7    requires that it have "minimum contacts" with the forum such that the exercise of jurisdiction "does

8    not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

9    U.S. 310, 316 (1945); *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 851 (9th Cir. 1993).

10     <u>Fed. R. Civ. P. 12(b)(3)</u>: Under Fed. R. Civ. P. 12(b)(3), a defendant may seek dismissal if

11   venue is not proper in the forum where the action has been filed. When a defendant challenges venue,

12   the burden is on plaintiff to establish that the chosen venue is proper under 28 U.S.C. § 1391.

13   *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In evaluating a

14   Fed. R. Civ. P. 12(b)(3) motion, the court may consider facts outside the pleadings. *Argueta v. Banco*

15   *Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996).

16     If venue is improper, the court must either dismiss the case or, if it is in the interest of justice,

17   transfer it to a district where venue is proper. 28 U.S.C. § 1406(a). This case presents an issue of first

18   impression. The Court should hold that where immigration prohibitions imposed by the United

19   States preclude the personal appearance and testimony of a party's sole principal and that party's

20   primary witness (Warner Decl. ¶ 76), while a court of the United States simultaneously requires

21   participation of that party in United States judicial proceedings, it *per se* offends international

22   comity, due process, and traditional notions of fair play and substantial justice. In essence, we

23   respectfully request the Court find that due process and comity mean that the United States may not

24   simultaneously compel a party to be bound by U.S. litigation while barring that party from

25   participating in that litigation with in-person testimony. Whether a defect in venue or a forum non-

26   conveniens,

27     <u>Fed. R. Civ. P. 12(b)(6)</u>: A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the

28

legal sufficiency of the allegations in the Complaint. To survive dismissal, a Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must accept all well-pleaded facts as true and construe them in the light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nor must courts accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Under Fed. R. Civ. P. 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Ninth Circuit interprets Rule 9(b) to require allegations to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To satisfy this standard, the Complaint must "set forth what is false or misleading about a statement, and why it is false," and allege "the who, what, when, where, and how" of the misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Where, as here, the Complaint does not allege a standalone cause of action for fraud, but rather includes isolated assertions of false or deceptive conduct within a broader, non-fraud claim (such as one for declaratory relief), only the discrete allegations sounding in fraud must meet Rule 9(b)'s heightened standard. In a case "where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Accordingly, where a plaintiff alleges that a defendant "falsely" asserted legal rights or made "false" statements, Rule 9(b) applies to those specific allegations.

If such allegations fail to satisfy Rule 9(b), the proper course is to disregard them in

1  evaluating the sufficiency of the remaining Complaint. *Vess*, 317 F.3d at 1105. Thus, a declaratory

2  judgment claim that includes allegations of "false" statements or representations must plead those

3  allegations with the requisite specificity or have them stricken or disregarded for failure to comply

4  with Rule 9(b), even if the remainder of the claim survives under the more liberal Rule 8(a) standard.

5  ### IV. FACTS:

6      Ultimately, this case boils down to a dispute over whether a Canadian trademark is valid and

7  infringed and whether efforts to prevent US-based technology companies, directly or via inducement

8  to infringe, by taking actions directed at Canada, are permissible based on whether the Canadian

9  actions infringe the Canadian trademark. CT sent numerous communications to US companies, but

10  all of them identified the Canadian registered trademark as the sole trademark at issue. Warner Decl.

11  ¶¶ 29 – 41. Facts specific to personal jurisdiction and venue are addressed in the legal analysis of

12  those issues. Because the question of the existence of a *bona fide* controversy under the Act is a fact

13  intensive inquiry, this "Facts" section includes context and interpretation of facts in light of what

14  must be proven to show declaratory judgment jurisdiction.

15      Given the legal standard requiring that Cohesity prove subject matter jurisdiction generally

16  and prove in a declaratory judgment action that a "definite and concrete", "real and substantial"

17  dispute exists of "sufficient immediacy and reality" to warrant judicial intervention, we direct the

18  Court's attention, in reviewing the facts, to the lack of any allegation that US trademark rights were

19  asserted by CT or that CT attempted to limit US activities (other than those targeting Canada) based

20  on the CT Canadian Mark as well as the lack of any threat to enforce U.S. trademark rights of

21  sufficient immediacy and reality as to satisfy the Act. *MedImmune, Inc. v. Genentech, Inc*., 549 U.S.

22  118, 127 (2007); *see  Rhoades,* 504 F.3d at 1157 ("the dispute must not be 'nebulous or contingent'

23  but 'of sufficient immediacy and reality'"); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227,

24  240–41 (1937) (controversy must be "definite and concrete, touching the legal relations of parties

25  having adverse legal interests").

26      Cohesity argues that CT's efforts to police its Canadian registered trademark TM1,260,843

27  (Warner Decl. Exh. A) ("Canadian CT Mark") comprised an effort to assert US rights of some kind.

28

1  They were not. Because the Complaint (ECF 1) is suffused with unsupported insinuation and

2  allusions to assertion of US rights by CT, we address and rebut each such allegation in turn. Where

3  we reference "paragraph X" or "¶ X", we refer to the Complaint.

4      In Paragraph 1, Cohesity makes a conclusory statement that there have been "infringement

5  assertions by Defendant" that give rise of jurisdiction under the Declaratory Judgment Act (the

6  "Act"), 28 U.S.C. § 2201 *et seq.* However, no statements made regarding non-Canadian rights are

7  referenced or alleged. In Paragraph 2, Cohesity alleges that CT made "demands that Cohesity cease

8  using the Helios Marks", that "third parties supporting the products and services offered under

9  Cohesity's Helios Marks similarly stop doing so", and that CT "continues to falsely allege that

10 Cohesity's use of its Helios Marks in the United States infringes [CT's] trademark". CT has only

11 ever asserted Canadian trademark rights.  Warner Decl. ¶¶ 11.

12     In Paragraph 4, Cohesity explains why "Defendant's allegations of trademark infringement

13 fail". As CT has not made any such allegations, we need not address the paragraph beyond stating

14 that "CT never attempted to enforce US trademark rights, although the Complaint attempts to imply

15 that [it] did without stating any facts to support that implication." Warner Decl. ¶ 11. Paragraph 5

16 repeats the same incorrect claim.

17     After describing Cohesity and its business, the Complaint alleges that on August 12, 2024,

18 CT contacted Cohesity, stated that "Cohesity infringed on Defendant's trademark" (without

19 specifying whether it was the existing Canadian CT Mark or some unidentified US mark) and sought

20 to license the Helios trademark to Cohesity or suffer "'catastrophic' consequences". ¶ 29. The initial

21 correspondence was clear: "I think it is always better to try and find a constructive solution to what

22 may be an unforeseen obstacle to both parties for Cohesity to continue to operate without

23 encumbrance in the Canadian market", and "[i]f the parties can come to an agreement I am generally

24 amenable to licensing CT's trademark for Canadian domestic usage." Warner Decl. ¶ 16, Exh. B.

25 The term "catastrophic" does not appear in that document, despite the allegation in the Complaint.

26     The term "catastrophic" appears in communications between the parties, but references harm

27 to CT, not Cohesity. Warner Decl. ¶ 49. For example, a September 10, 2024 message from Mr.

28

1   Warner to Cohesity's Canadian counsel stated that "as you are well aware from the Canadian

2   jurisprudence, [CT] can lose its mark for failure to police it. That would cause catastrophic and

3   irreparable harm to CT…". Warner Decl. ¶ 49(a). Far from indicating an intent to cause catastrophic

4   damage to Cohesity in the United States, the communication said that CT wanted to avoid suffering

5   catastrophic damage to its rights within Canada.

6       Paragraph 31 alleges that CT filed a trademark application with the USPTO on August 12,

7   2024. However, Cohesity has obtained multiple extensions of time to file an opposition to

8   registration, and the due date is currently extended through August 13, 2025. Warner Decl. ¶ 55,

9   Exhs. V, W. We assume that professional ethics were complied with and that this filing was made

10  based on a good faith belief that the law and facts support denial of the mark's issuance. Under the

11  Lanham Act, "[a]ny person who believes that he would be damaged by the registration of a mark…

12  may… file an opposition" (15 U.S.C. § 1063(a)), and the same standard applies to a request for an

13  extension of time to oppose (37 C.F.R. § 2.102(a)). The USPTO has made clear that such a request

14  must be based on a *bona fide* belief that grounds for opposition exist. 37 C.F.R. §§ 2.102, 11.18(b)).

15  The Trademark Trial and Appeal Board Manual of Procedure reinforces that extension requests

16  "may not be filed for improper purposes, such as harassment or delay," and must rest on a

17  contemplated legitimate challenge (Trademark Trial & Appeal Bd. Manual of Procedure § 206.01

18  (June 2024). Thus, a party seeking such an extension is presumed to act on a good-faith belief that

19  the mark is subject to challenge and may not invoke the opposition process frivolously or

20  speculatively. Accordingly, the allegation of Paragraph 31 is of questionable materiality, as Cohesity

21  required a good faith belief that the registration would not issue in order to file the multiple requests

22  for extension of time.

23      <u>Paragraph 32 is particularly misleading</u>. Cohesity claims that it was threatened that if

24  "resolution was not reached, **'[t]he fallout would inevitably not be contained domestically'** (*i.e.*,

25  in Canada)" (emphasis added by Cohesity). This is the cornerstone of Cohesity's claim that CT

26  threatened domestic US enforcement. The problem, however, is that it is entirely false, and "when

27  read in full, makes it clear that [CT] was referencing the impact of losing Canadian litigation over

28

the Canadian CT Mark." Warner Decl. ¶ 56. The full quote from the letter is:

> If CT fails to issue notices in a timely manner there may be grave consequences. The most important of which is, as you are well aware from the Canadian jurisprudence, it can lose its mark for failure to police it. That would cause catastrophic and irreparable harm to CT, a risk any responsible founder should not be prepared to gamble with.
>
> The burden of issuing the notices themselves to the stakeholders could be significant, putting aside the consequences of doing so. Just one of the many identified domestic Cohesity resellers has at least 81 other subcontractors under its auspices with commercial offerings related to Cohesity's Helios. AWS Canada, Insight, and many others are also engaged in similar activity. That does not even begin to canvass all of the end-user customers of the aforementioned.
>
> The fallout would inevitably not be contained domestically. Cohesity has statutory obligations to notify the SEC with respect to any omitted material representations in their Form S-1 registration statement or its draft. The company proposing to sell securities in its current predicament would be problematic, to say the least.

Warner Decl. Exh. H.

Taken in context, it is beyond dispute that the non-domestic fallout referred to SEC and other regulatory reporting that may be required in the wake of a loss in the Canadian Proceeding. The communication first notes that CT has obligations in Canada to police the Canadian CT Mark. It then explains that CT will suffer a burden if required to notify entities such as "AWS Canada" to cease contributing to infringement in Canada, and that ultimately violating Canadian law may have consequences, such as regulatory reporting, outside of Canada. Far from a "threat" to enforce within the United States, the letter was an examination of what Canadian enforcement could result in. Whether or not Mr. Warner was right that reporting to the SEC might be required if the Canadian Proceeding were lost by Cohesity, nothing in the correspondence was remotely close to threatening action within the U.S.

Paragraph 33 continues the canard of Paragraph 32. CT absolutely contacted third parties, but only in furtherance of protecting its Canadian rights under the Canadian CT Mark. It is meaningful that even in alleging on information and belief, Cohesity does not allege that CT told Cohesity's "business partners in the United States" that any US trademark rights were infringed. Because there is no evidence supporting such a statement, Cohesity was right to avoid alleging something unsupported by the evidence. Warner Decl. ¶ 57.

1    Paragraph 35 falsely states that "Defendant continues to allege that Cohesity infringes in the

2    United States" without citing any evidence in support. CT has not alleged infringement within the

3    United States.  Warner Decl. ¶¶ 50, 52, 59. The allegation that "a thousand takedown requests" were

4    sent to US business partners is proves nothing regarding the Act. A single notice can comprise

5    thousands of takedown requests. Warner Decl. ¶ 52. No amount of takedown requests sent

6    demanding that US companies cease activities that contribute to Cohesity's infringement of the CT

7    Canadian Mark within Canada suffice to evoke or imply infringement of any U.S. trademark rights.

8    The implication throughout the factual allegations is that CT contacted US companies and

9    asserted US trademark rights. This is a false implication. Correspondence with third parties "was

10    carefully limited to actions causing or comprising activities in Canada. No U.S. trademark rights,

11    whether via a U.S. registered mark, via common law rights, or otherwise, were asserted." Warner

12    Decl.  ¶ 29. Indeed, "CT has not determined whether it holds U.S. rights, is currently focused on

13    protecting its rights in its native Canada, and does not currently have any intent to initiate a U.S.

14    court action even if it were to determine that it holds U.S. rights." *Id*. Indeed, given that Mr. Warner

15    is unlikely to be able to travel to the United States, assertion of U.S. rights in a U.S. court cannot be

16    undertaken on a level playing field so long as the United States border policy impairs the ability of

17    Canadians, particularly those who are vocal in their opposition to U.S.. actions and furthering

18    Canada's liberation from economic dependance on the U.S., to safely cross the border. *See* Warner

19    Decl. ¶¶ 63 – 76.

20    To be clear, CT asked Apple, Inc. to take action against distribution of software in Canada

21    that violated the CT Canadian Mark with no reference or allegation to any U.S. rights or U.S.

22    infringement. Warner Decl. ¶¶ 31 – 34. CT asked the Canada Border Services Agency for assistance

23    in stopping infringing products from entering Canada from abroad. Warner Decl. ¶ 35. A trademark

24    report form filed with Meta's Facebook requested that it take steps to comply with the CT Canadian

25    Mark by taking steps in Canada to avoid "confusion in the Canadian marketplace." Warner Decl. ¶

26    36. A trademark policy violation report was filed with Microsoft's GitHub asking for the remedy

27    that "[t]he publications available in Canada need to be removed from the Cohesity repositories at

28

MEMORANDUM OF P&A IN SUPPORT OF MOTION TO DISMISS.
NO. 4:24-CV-09104-JST

1    this time." Warner Decl. ¶ 37. A Complaint filed with Google specified that Google take steps only

2    regarding rights in Canada. Warner Decl. ¶38. A trademark report form filed with Meta's Instagram

3    specified that the rights to be enforced were Canadian only, and the report was intended to avoid

4    "confusion in the Canadian marketplace". A report filed with X (formerly Twitter) clearly

5    identifying Canada as the sole location where action was requested, and that the report was to avoid

6    "confusion in the Canadian marketplace". Warner Decl. ¶ 40. A trademark report filed with

7    Alphabet's YouTube selected Canada as the country of trademark registration and was filed to avoid

8    "confusion in the Canadian Marketplace". Warner Decl. ¶41.

9        Put simply, it is hard to imagine what more CT could have done to clarify that it sought

10   action only impacting Canada and only to protect and police its Canadian trademark rights while

11   assiduously avoiding asserting any U.S. rights or trademark infringement within the United States.

12   ## V. DISCUSSION

13

14   ### A. The Court Lacks Subject Matter Jurisdiction (12(b)(1)):

15       "In our system of government, courts have no business deciding legal disputes or expounding

16   on law in the absence of such a case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90

17   (2013) (internal citation and punctuation omitted). "That limitation requires those who invoke the

18   power of a federal court to demonstrate standing—a personal injury fairly traceable to the

19   defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id*. "The

20   requirement that a case or controversy exist under the Declaratory Judgment Act is identical

21   to Article III's constitutional case or controversy requirement." *Principal Life Ins. Co. v. Robinson*,

22   394 F.3d 665, 669 (9th Cir. 2005) (internal citation and punctuation omitted).

23       As described in the Facts section, CT assiduously limited enforcement efforts to policing its

24   Canadian registered trademark against infringing activities in Canada. Warner Decl. ¶¶ 29 - 41. CT

25   has not determined whether there is any trademark infringement under US law. Warner Decl. ¶ 29.

26   CT has not threatened to bring an action against Cohesity in circumstances where a determination

27   of infringement has not been made. CT's association with the Canadian Minister of AI and role in

28

1    Canada's efforts to extricate itself from economic dependance on the U.S. is such that it will not

2    assert rights against a U.S. company for infringement within the U.S. without first coordinating with

3    Canadian government officials, lest it undermine such efforts. Warner Decl.  ¶¶ 64 – 68.[2]

4        The Complaint carefully avoids any specific allegations in the nature of "On January 1, 2025,

5    CT wrote to ExampleCo alleging that its distribution of Cohesity products marked with the word

6    Helios infringes its rights within the United States." Rather, Cohesity dances around its inability to

7    so allege pursuant to Rule 11 by making vague allegations inferring that such statements were made.

8    It cites "infringement assertions by Defendant" (¶ 1) without saying that the assertions related to

9    U.S. rights; that "third parties supporting the products and services offered under Cohesity's Helios

10   Marks similarly stop doing so" (¶ 2) without clarifying that anything other than the CT Canadian

11   Mark is being asserted; Cohesity says that "Defendant's allegations of trademark infringement fail",

12   yet CT has only alleged trademark infringement of the CT Canadian Mark within Canada, and that

13   matter is being resolved by pending litigation in Canada.

14       The only clear statement that CT has asserted rights within the United States is in paragraph

15   5 and ignoring the failure to meet Rule 9's heightened pleading requirements (see below), even that

16   statement does not clarify that CT is asserting anything other than its Canadian registered mark. To

17   be clear: CT knows that a Canadian trademark does not restrict trade within the US, or sales to US

18   consumers in the US, and that question is not at issue here.

19       Under the Lanham Act, a federal certificate of registration is "*prima facie* evidence" of the

20   mark's validity and of the registrant's "exclusive right to use" that mark nationwide as of the

21   application's filing date.  15 U.S.C. §§ 1057(b), 1057(c), 1072, 1115(a). Once issued, the registration

22   provides constructive notice that bars subsequent users from acquiring superior rights, subject only

23   to the narrow "limited-area" defense in which a prior user may continue use solely in the territory

24   where it can prove continuous pre-registration use. 15 U.S.C. § 1115(b)(5). Cohesity's own

25   Complaint disclaims CT's prior use, stating "even if Defendant could somehow show priority of use

26

27   _____

     [2] It is unclear how such an assertion would impact Canadian/US relations, but the importance of AI

28   to Canada's economic future is such that CT would coordinate out of an abundance of caution.

1  of the name HELIOS in the United States…" ¶ 4. Indeed, "Cohesity is not aware of prior use by

2  [CT]…" ¶ 4. CT has not asserted priority of use in this litigation or in the communications upon

3  which this litigation is predicated, and Cohesity dismisses the likelihood of showing such use.

4      Cohesity may point to CT's application for a registered trademark in the U.S., but CT

5  currently has no U.S. registered mark – and Cohesity itself has prevented any registration from

6  issuing to date. Warner Decl. ¶ 29. All the acts alleged in the Complaint were made in reliance only

7  on the Canadian mark, and only regarding policing that mark in Canada.

8      Cohesity appears to allege that CT is asserting some form of common-law rights. Such

9  rights, even if established, are confined to the geographic "limited area" of CT's pre-2020 U.S.

10 operations and cannot displace Cohesity's nationwide rights in HELIOS. See *Thrifty Rent-A-Car*

11 *Sys., Inc. v. Thrift Cars, Inc.*, 639 F. Supp. 750, 754 (D. Mass. 1986). Cohesity did not allege any

12 area where CT has or claims senior rights, and without such an allegation, Cohesity has not alleged

13 any rights that can be asserted in the face of Cohesity's registered U.S. mark. Because CT cannot,

14 as a matter of law, obtain relief beyond its historical trading area in the United States (if any), a

15 "definite and concrete" adverse claim has not been alleged as capable of sustaining jurisdiction under

16 the Declaratory Judgment Act, 28 U.S.C. § 2201(a). *See MedImmune, Inc. v. Genentech, Inc.*,

17 549 U.S. 118, 127 (2007). In short, based on the allegations in the Complaint, CT's unregistered or

18 foreign trademark rights do not create a justiciable controversy in the face of Cohesity's

19 presumptively valid and nationwide U.S. registration.

20      Even ignoring the lack of an Article III case or controversy, and of an actual controversy for

21 purposes of the Act, the Act provides flexibility in stating that a Court need not, but "may" entertain

22 a declaratory judgment case. 28 U.S.C. § 2201. This places the adjudication of a declaratory

23 judgment action within the discretion of the District Court, and in "exercise of this discretion, the

24 Court may take into account concerns of judicial administration, comity, and fairness to the

25 litigants." *Twitter, Inc. v. Holder*, 183 F. Supp. 3d 1007, 1012–13 (N.D. Cal. 2016), citing *Principal*

26 *Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir.2005); *Wilton v. Seven Falls Co.*, 515 U.S. 277,

27 282 (1995) (district courts possess significant discretion to dismiss or stay declaratory actions in

28

favor of parallel proceedings). As explored in the section discussing venue pursuant to 12(b)(3), holding a trial in the United States where the principal of the defendant cannot appear would be unfair to the litigants. Determining Canadian trademark rights while a Canadian Federal Court case is pending on the same matter is injurious to comity and would see duplication of judicial efforts in determining rights under the same Canadian trademark. This is particularly so when there is no dispute that CT's Canadian mark has no extraterritorial effect.

Cohesity's Complaint, by its vagueness, underscores that it cannot point to a single instance of CT claiming or enforcing a U.S. Helios trademark right. If this were to be a conflict of "sufficient immediacy and reality" to warrant judicial intervention. *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc*., 771 F.3d 632, 635 (9th Cir. 2014), Cohesity would not have delayed filing an opposition to CT's application for a registered U.S. mark by twice requesting an extension of time to file an opposition. *See* Warner Decl. ¶¶ 6, 29, 55, 83, Exhs. V, W, X. Furthermore, despite pursuing this litigation and counterclaiming in the Canadian Proceeding, Cohesity's counsel represented to the Trademark Trial and Appeal Board that it has good cause to delay registration because it "needs additional time to investigate the claim". Warner Decl. ¶ 83, Exh. X.  This is directly contrary to numerous statements made in the Complaint, and the lackadaisical approach to challenging the CT's application in the TTAB makes clear that Cohesity's urgency in the litigation is not based on any reasonable apprehension of immediate or even near-term harm.

**B. <u>The Court Lacks Personal Jurisdiction Over CT (12(b)(2)):</u>**

Plaintiff bears the burden of establishing personal jurisdiction over CT, a foreign corporation. Here, both general and specific jurisdiction are lacking. CT is a Canadian corporation with its headquarters and principal (Mr. Warner) in Vancouver, British Columbia; it is not "at home" in California, nor has it purposefully availed itself of or purposefully directed activities toward California. Warner Decl. ¶¶ 77-79. Furthermore, exercising jurisdiction would be unreasonable under these circumstances. Accordingly, the Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. In the alternative, if the Court believes any jurisdictional

1    facts remain to be developed, CT respectfully requests limited jurisdictional discovery.

2        A court may exercise all-purpose jurisdiction over a corporation only where it is "essentially

3    at home," ordinarily in its place of incorporation or principal place of business. *Daimler AG v.*

4    *Bauman*, 571 U.S. 117, 137–39 (2014). CT is incorporated and headquartered in Canada and

5    maintains no offices, employees, bank accounts, real property, or continuous operations in

6    California. These contacts fall far short of the "exceptional" circumstances required for general

7    jurisdiction. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). As CT is not at home in California,

8    there is no general jurisdiction.

9        Specific jurisdiction is also lacking. The Ninth Circuit applies a three-part test: (1) the

10   defendant must purposefully avail itself of, or purposefully direct conduct at, the forum; (2) the claim

11   must arise out of the forum-related activities; and (3) the exercise of jurisdiction must be reasonable.

12   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

13       1(a). **No Purposeful Availment.** CT has never executed commercial contracts, sold

14   products, or otherwise sought to benefit from California's market. Warner Decl. ¶ 78. Mere

15   knowledge that Cohesity is headquartered in California does not constitute purposeful availment.

16   *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Walden v. Fiore,* 571 U.S. 277, 285–

17   86 (2014*)* (emphasizing that a defendant's suit-related conduct must create a substantial connection

18   with the forum, and the plaintiff's contacts with the forum cannot themselves establish jurisdiction).

19       1(b). **No Purposeful Direction.** A defendant purposefully directs activity at a forum only if

20   it (i) commits an intentional act, (ii) expressly aims that act at the forum, and (iii) knows harm is

21   likely to be felt there. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Schwarzenegger*, 374 F.3d at

22   803. CT's enforcement letters were expressly limited to its Canadian trademark and requested only

23   the cessation of infringing activity in Canada. Sending a cease-and-desist notice to a forum resident,

24   without more, is insufficient to establish purposeful direction. *Yahoo! Inc. v. La Ligue Contre le*

25   *Racisme et l'Antisémitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc) ("A cease and desist letter

26   is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter.").

27   Because CT aimed its conduct at Canada—not California—there is no express aiming.

28

2. **The Claims Do Not Arise Out of Forum Contacts.** Even if CT's Canada-focused notices could be deemed forum contacts, Cohesity's declaratory-judgment claim would not "arise out of" those contacts because the notices targeted only Canadian activity. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264–65 (2017). The "partners" cited in Paragraph 12 had nothing to do with trademark matters. Warner Decl. ¶ 79. The leadership team referenced in Paragraph 13 are likewise either outside of the United States (as is the case with Gary Shuster) or unrelated to trademark matters (as is the case with Dean Becker). Warner Decl. ¶¶ 82. Even assuming CT's communications with Cohesity's 'partners' or its hiring of U.S.-based advisors constituted forum contacts (they do not relate to the trademark dispute at all), the declaratory claim still would not 'arise out of' those contacts, as required. See *Bristol-Myers*, 582 U.S. at 264 (requiring a causal link between forum contacts and claim)."

3. **Jurisdiction Would Be Unreasonable.** The relevant factors—burden on CT, weak California interest in a Canada-centered dispute, availability of an adequate Canadian forum, and comity concerns—render jurisdiction "unreasonable" and thus impermissible. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011).

Even if Plaintiff could establish the minimum contacts prong (it cannot), forcing CT to defend this case in California would be fundamentally unreasonable and unfair. The Court must consider several factors in assessing reasonableness, including: (a) the extent of the defendant's burden in litigating in the forum; (b) the forum state's interest in adjudicating the dispute; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the international judicial system's interest in efficient resolution of controversies; and (e) the shared interest of sovereign states (here, the U.S. and Canada) in furthering fundamental social policies. Each factor favors CT:

- **Burden on Defendant:** Litigating in California imposes a severe burden on CT, a small Canadian company. CT has no presence or personnel in California, meaning Mr. Warner (its principal) would have to travel internationally (a task that may be impossible, *See* Warner Decl. ¶¶ 63 – 76) and navigate U.S. legal proceedings at great expense. Defending this

lawsuit in a foreign country (with different legal rules and without fee-shifting) would divert CT's resources and time away from its core business. While the legal fees involved in this litigation may be a rounding error on Cohesity's balance sheet, they are prohibitive for any normal small business or startup. This heavy burden weighs against jurisdiction.

- **Forum State's Interest:** California's interest in adjudicating this dispute is relatively low. The core issue is CT's assertion of its Canadian trademark rights and Cohesity's use of "Helios" in Canada. While Cohesity is a California company, it is *not* being sued for any wrongdoing under U.S. law; rather, Cohesity brought this case as a declaratory action. California has little interest in providing a forum for a pre-emptive strike against a foreign company enforcing foreign IP rights. In contrast, Canada has a strong interest in resolving disputes over Canadian trademarks (especially one, like CT's "HELIOS," which was granted by the Canadian Intellectual Property Office).

- **Plaintiff's Interest in Relief:** Cohesity, as a large U.S. corporation, may prefer a home forum, but it will not be significantly prejudiced if required to resolve the trademark issues in Canada (where CT's enforcement efforts are centered and where a <u>parallel Canadian Proceeding is already pending</u>). Cohesity does business internationally, including in Canada, and can obtain effective relief through the Canadian courts – which are fully capable of adjudicating the scope of CT's Canadian trademark and any defenses.

- **Judicial Efficiency:** Considerations of efficiency strongly favor dismissal (or at least a stay) in favor of the ongoing Canadian Proceeding. The Canadian Proceeding was filed by CT to resolve the very trademark conflict at issue. That court can comprehensively decide the parties' rights with respect to the "Helios" mark in Canada. Maintaining a duplicative proceeding in California – where no U.S. trademark is even being asserted – wastes judicial resources and risks inconsistent results. It is more efficient to let the Canadian court decide the dispute that is squarely before it, rather than to litigate tangential issues here.

- **Substantial Social Policies:** Finally, exercising jurisdiction in this case would implicate international comity and sovereignty concerns. CT's conduct was an effort to enforce

Canadian law within Canada. Canada has a sovereign interest in regulating and adjudicating the rights granted under its trademark system. If this Court were to assert jurisdiction and potentially enjoin CT's activities in Canada and/or in policing a Canadian trademark, it would effectively be restraining a Canadian trademark's enforcement within Canada, which encroaches on Canada's policy prerogatives. Respect for Canada's legal system and the value of international harmony counsel against a U.S. court asserting authority over this dispute. In contrast, dismissing or staying this case respects the appropriate forum (Canada) for a Canada-centric trademark controversy.

Haling CT into a California court would offend traditional notions of fair play and substantial justice. CT's lack of meaningful California contacts, combined with the availability of an adequate alternative forum in Canada, makes the exercise of jurisdiction unreasonable. Because Plaintiff cannot satisfy its burden on either the minimum contacts or reasonableness prongs, the Court should grant CT's motion to dismiss for lack of personal jurisdiction.

If the Court harbors any doubt about the facts relevant to jurisdiction, CT requests, in the alternative, that the parties be allowed to conduct limited jurisdictional discovery before the Court makes a final ruling. While CT is confident that the existing record demonstrates a lack of jurisdiction, jurisdictional discovery (or an evidentiary hearing) could be used to resolve any material factual disputes – for example, to confirm that CT has no hidden meaningful California contacts or that CT's communications were in fact limited to Canadian enforcement. Such discovery is often allowed when a plaintiff's jurisdictional claim is attenuated but not entirely frivolous. Here, if the Court is not inclined to dismiss outright, providing a short period for focused discovery (or holding a hearing) will ensure that a jurisdictional dismissal, if granted, rests on a fully developed record. This approach safeguards the parties' rights and preserves judicial economy, by avoiding costly unnecessary discovery, pretrial motion practice and an unnecessary trial on the merits in a forum that lacks jurisdiction. If, after discovery, Plaintiff still cannot establish a prima facie case for personal jurisdiction, the case should be dismissed.

**C. The Court Should Dismiss Under Rule 12(b)(3) and the Doctrine of *Forum Non Conveniens* Because CT Cannot Present Its Sole Witness Live in This District:**

A defendant may move to dismiss for "improper venue" under Rule 12(b)(3). The Court may also dismiss on *forum non conveniens* grounds where, as here, " an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience … the court may, in the exercise of its sound discretion, dismiss the case." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 (1981) (internal punctuation omitted).

When practical difficulties exist (such as where key witnesses cannot appear live) and an adequate foreign forum exists, dismissal is favored. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–35 (2007); *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664–65 (9th Cir. 2009).

CT's founder and sole factual witness, Mr. Warner, is a Canadian citizen of visibly Punjabi heritage with no U.S. immigration status. His live attendance is foreclosed by multiple, independently sufficient barriers:

1. **Visa barrier.** A foreign national who enters the United States to testify must generally qualify for a B-1 business visa or ESTA waiver; neither is assured, particularly in the current U.S. political environment, and denials are common when the traveler will "work" or earn compensation. Courts have dismissed when key witnesses could not be expected to obtain U.S. visas. *See Moletech Glob. Hong Kong Ltd. v. Pojery Trading Co.*, No. 4:09-CV-00027-SBA, 2009 WL 3151147 (N.D. Cal. Sept. 25, 2009).

2. **Cannabis inadmissibility trap.** Any admission of prior marijuana use renders a non-citizen permanently inadmissible. 8 U.S.C. § 1182(a)(2)(A)(i)(II). U.S. Customs and Border Protection routinely asks Canadians about cannabis; an honest "yes" results in a lifetime bar, a false "no" constitutes criminal misrepresentation, and refusal to answer leads to immediate exclusion. Because Mr. Warner strongly believes it inappropriate to ask about legal activities

and apply punishments therefor, he would therefore invoke his right against self-incrimination under § 13 of the *Canadian Charter of Rights and Freedoms* if questioned in the U.S. pre-clearance zone, effectively barring his entry.

3. **Risk of racial profiling and detention.** CBP statistics show disproportionate secondary inspections of travelers of South-Asian appearance. Due process requires that witnesses should not be forced into a forum where racial or religious bias impedes their participation.

4. **Risks specific to Mr. Warner's Pro-Canadian Activities.** Mr. Warner participated in the Canadian government's efforts to incrementally divest from the U.S. economy in an effort to rebuff the tariffs President Trump has imposed on Canada. Warner Decl. ¶¶ 63-76. Canada's Minister of AI highlighted the important role that CT's technology "can play in Canada's new economic policy to promote Canadian innovation domestically and abroad which would reduce [Canadian] reliance on American technology giants." Warner Decl. ¶ 66. CT is a critical component of a broader national strategy being implemented at high levels of Canadian economic and foreign policy, contrary to the stated interests of the U.S. executive branch. Mr. Warner admits to a "history of taking actions that would likely anger the current American administration, including vocal opposition to certain portions of American foreign and domestic policy, and [his] staunch support for Canada in the face of [President Trump's] threats to its national sovereignty. Warner Decl. ¶ 68. In light of Mr. Warner's belief in the accuracy of the reporting of the recent 12 day "disappearing" of a Canadian businesswoman who was detained for attempting to apply for a TN visa at the border, the comments reported by the Premier of British Columbia warning Canadians of the fraught nature of the relationship with the United States, and the hostility the United States has expressed against Canadian sovereignty, Mr. Warner is "exceedingly reluctant to travel to the United States" and does not believe he can safely do so. Warner Decl. ¶¶ 69 – 71.

**C. Live Testimony Is Indispensable; Video Is an Inadequate Substitute**

The Supreme Court has long emphasized that trying a case "on deposition" is "not satisfactory to court, jury or most litigants." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511

(1947). Modern courts reiterate that credibility contests demand face-to-face testimony. Rule 43(a) allows testimony by contemporaneous transmission only upon "good cause in compelling circumstances," and the Advisory Committee warns that "the importance of presenting live testimony in court cannot be forgotten."

Because Mr. Warner is CT's *only* percipient witness, proceeding in this District would force CT to rely on video or deposition testimony—precisely the less than satisfactory substitute condemned in *Gulf Oil*. The imbalance is stark: Plaintiff's witnesses will appear live before the jury, while CT's founder appears on a screen or not at all, skewing the fact-finder's credibility assessment and violating fundamental fairness. See *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (due process protects right to present witnesses).

### D. The *Gilbert* Private- and Public-Interest Factors Overwhelmingly Favor Canada

*Private-interest factors.* All of CT's evidence and its lone witness are in Vancouver. None can be compelled to the Northern District of California, and video testimony would prejudice CT. Conversely, Plaintiff (who chose this forum merely to seek declaratory relief) can litigate in Canada with minimal inconvenience – and is indeed already doing so in the Canadian Proceeding.

*Public-interest factors.* Canada has a strong interest in adjudicating rights and obligations of a Canadian corporation and its sole principal. Trying the case here would burden local jurors with a dispute that cannot be fully and fairly presented. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981) (dismissal appropriate when foreign forum's interest outweighs U.S. interest).

### E. An Adequate Alternative Forum Exists

Canadian federal courts provide declaratory relief, compel witnesses resident in the province, and apply procedures consistent with due process. CT consents to jurisdiction there. Consequently, dismissal is appropriate. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435, (2007) (dismissal proper where alternative forum is both available and adequate).

### F. Due Process Independently Requires Dismissal

Proceeding despite Warner's exclusion would deny CT a "meaningful opportunity to present [its] case." *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976). A forum that, by operation of U.S. border

1  law, silences the defendant's principal witness cannot comport with the Fifth Amendment's

2  guarantee of fundamental fairness. Critically, this is not a situation outside of the power of the United

3  States to fix. Unlike cases where repressive regimes prohibit residents from leaving to testify in a

4  foreign forum, in this case the United States is simultaneously prohibiting Mr. Warner from entering

5  while requiring that he litigate in that forum (whether the prohibition is *per se* or via the implied risk

6  of incarceration for merely attempting to do so, as has happened in other cases involving Canadian

7  business travel, Warner Decl.  ¶ 70). Mr. Warner is CT's primary fact witness. Warner Decl. ¶ 76.

8       Because CT's only witness is effectively barred from safely entering the United States—and

9  because remote testimony cannot cure the resulting prejudice—the Northern District of California

10  is an improper and unjust forum for this action. The Court should dismiss under Rule 12(b)(3) and

11  the doctrine of *forum non conveniens*, permitting the parties to litigate, or more correctly to continue

12  existing litigation, in British Columbia where all witnesses can appear live and due process can be

13  honored.[3]

14

15  **D.  The Court Should Dismiss Under Rule 12(b)(6) Because Compliance With Rule 9 Requires Key Allegations to be Pled With Specificity (in the Alternative, This Court Should Order a More Definite Statement, Fed. R. Civ. P. 12(e)):**

16

17

18       Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must

19  state with particularity the circumstances constituting fraud or mistake." The Ninth Circuit interprets

20  Rule 9(b) to require allegations to be "specific enough to give defendants notice of the particular

21  misconduct which is alleged to constitute the fraud charged so that they can defend against the charge

22  and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th

23  Cir. 1985). To satisfy this standard, the Complaint must "set forth what is false or misleading about

24  a statement, and why it is false," and allege "the who, what, when, where, and how" of the

25

26  [3] While there is serious doubt as to whether an Article III court may require the executive to admit

27  a non-citizen for purposes of testifying at trial, CT respectfully requests that should this motion be

28  denied, the Court issue such an order.

1    misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

2    Where, as here, the Complaint does not allege a standalone cause of action for fraud but

3    rather includes isolated assertions of false or deceptive conduct within a broader, non-fraud claim

4    (such as one for declaratory relief), only the discrete allegations sounding in fraud must meet Rule

5    9(b)'s heightened standard. In a case "where fraud is not an essential element of a claim, only

6    allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements

7    of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); see also *Vess*, 317

8    F.3d at 1104 ("Rule 9(b) applies to particular averments of fraud... regardless of whether fraud is an

9    essential element of the claim."). Accordingly, where a plaintiff alleges that a defendant "falsely"

10   asserted legal rights or made "false" statements, Rule 9(b) applies to those specific allegations.

11   If such allegations fail to satisfy Rule 9(b), the proper course is to disregard them in

12   evaluating the sufficiency of the remaining Complaint: If "particular averments of fraud are

13   insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip'

14   them from the claim. The court should then examine the allegations that remain to determine whether

15   they state a claim." *Vess*, 317 F.3d at 1105. Thus, a declaratory judgment claim that includes

16   allegations of "false" statements or representations must plead those allegations with the requisite

17   specificity, or have them stricken or disregarded for failure to comply with Rule 9(b), even if the

18   remainder of the claim survives under the more liberal Rule 8(a) standard.

19   The following paragraphs of the Complaint fall under Rule 9(b): 2, 5, 14, 15, 33 (all alleging

20   that CT's allegations of infringement are false allegations of infringement, using the term "false" or

21   "falsely").

22   Should the Court not dismiss for failure to state a claim, CT respectfully requests that it order

23   a more definite statement pursuant to Fed. R. Civ. P. 12(e). That rule provides that "A party may

24   move for a more definite statement of a pleading to which a responsive pleading is allowed but which

25   is so vague or ambiguous that the party cannot reasonably prepare a response.". In the case at bar,

26   none of the allegations that CT falsely claimed the CT Canadian Mark (or perhaps CT common law

27   rights in the U.S. – it is unclear from the pleading) were infringed in the United States are sufficiently

28

1    clear to permit a response.

2        Paragraph 2 alleges that CT has made "demands that Cohesity cease using the Helios Marks"

3    (defined in paragraph 1 as a "trademark for HELIOS software products and services, embodied *in*

4    *part* in its common law rights and its federally registered rights in the trademark HELIOS")

5    (emphasis added), yet CT  has made no such demand unless, we might speculate, the allegation

6    relates to the portion of the defined term "Helios Marks" that is left undefined via the term "in part".

7    Paragraph 4 provides an explanation of why "Defendant's allegations of trademark infringement

8    fail" but does not provide enough context to understand what allegations they refer to – much less

9    whether they refer to allegations of infringement in Canada of the CT Canadian Mark or some

10   unidentified US trademark rights. Paragraph 5 alleges that CT "continues to falsely allege that

11   Cohesity's use of the Helios Marks in the United States infringes Defendant's trademark", likewise

12   not providing enough information to identify the statements that Cohesity alleges were made, much

13   less whether Cohesity alleges that CT has taken the absurd position that a Canadian mark can

14   somehow limit domestic commerce within the United States or whether some other trademark rights

15   Cohesity believes CT to hold were allegedly asserted.

16       Paragraph 15 is particularly suspect, stating that CT "also directly contacted one of

17   Cohesity's business partners in this District, regarding Defendant's false allegation that Cohesity

18   infringes [CT's] trademark and [CT] actively solicited that business partner to stop carrying or

19   supporting Cohesity's Helios products and services due to the alleged infringement." However, the

20   allegation is impermissibly vague: Is the allegation that CT asked Cohesity's business partner to

21   cease infringement within Canada, the United States, or elsewhere? The same uncertainty suffuses

22   paragraph 16. Paragraph 35 does the same – implying specific instances of allegations of

23   infringement without sufficiently identifying even one of those allegations in a way that would

24   permit CT to identify any of the recipients of that allegation.

25       Paragraph 18 similarly alleges CT has harmed Cohesity by sending takedown requests but

26   does not specify whether those requests were directly solely to Canadian activities, as the Warner

27   Declaration details.

28

Paragraph 29 discusses "Defendant's trademark", but never identifies whether it is CT's Canadian registered mark or some other trademark rights that Cohesity somehow believes may be asserted in the face of Cohesity's registered US mark. Likewise, paragraph 33 alleges that CT contacted Cohesity business partners in the United States "with false allegations that Cohesity infringes Defendant's trademark and encouraged each of them to stop supporting Cohesity's Helios products and/or services because of the infringement", but never specifies whether it references CT's registered Canadian mark or some US common-law trademark rights.

Finally, and perhaps most critically, the prayer for relief appears to seek a global anti-suit injunction prohibiting CT from "asserting or otherwise enforcing any alleged trademark rights against Cohesity", and that "Cohesity's use of its HELIOS trademark does not infringe Defendant's alleged trademark rights", which would encompass Canadian trademark rights.

## VI. CONCLUSION:

CT carefully limited its trademark enforcement efforts to rights arising from a Canadian registered mark within the Canadian market. The Complaint is quite imprecise in alleging which trademark rights are at issue, whether the communications extended beyond Canadian rights (they did not), and even whether it seeks to declare that Cohesity's use of HELIOS does not infringe CT's trademark rights without geographic restriction. Litigation costs may be a *de minimums* investment for a multi-billion-dollar company with a dedicated legal department, but it is a deadly serious threat to the viability of every small company. CT should not be forced to disrupt its development activities and spend resources it cannot recover and are better spent on programmers to defend a suit that runs parallel to a suit already pending in Canada, a jurisdiction where Cohesity has already appeared in the litigation and where CT will recover its fees upon winning the suit.  The Complaint stretches to allege that CT is seeking to either enforce a Canadian trademark within the United States or to enforce common law U.S. rights while assiduously keeping vague which of those it bases the suit on.

As described above, there is no case or controversy for Article III purposes or active controversy for purposes of the Act; personal jurisdiction over CT is lacking; and trying this case in

the United States would deprive CT of due process in that US hostility to Canadians at the border makes in-person testimony unlikely to be allowed. Perhaps most revealing, copies of the actual communications misleadingly referenced in the Complaint show that they were solely directed to protection of the Canadian registered mark within Canada.

For the foregoing reasons, the Complaint should be dismissed, or, in the alternative, a stay should be granted pending the outcome of the Canadian Proceeding. In the event that dismissal does not take place, CT respectfully requests that the Court order a more definite statement with regard to paragraphs 1, 2, 4, 15, 16, 18, 29, 33, 35, and the prayer for relief.

.

.

DATED: July 27, 2025                    GARY SHUSTER

By: _/s/ Gary S. Shuster_____

2301-1228 Marinaside Crescent
Vancouver BC V6Z 2W4
Canada
Attorneys for Cartesian Theatre