GARY SHUSTER, CSB 162379
gary@shuster.com
2301-1228 Marinaside Cr.
Vancouver, British Columbia V6Z 2W4
Canada
Telephone: (604) 417-5002
Facsimile: (559) 272-2222

*Attorney for Defendant Cartesian Theatre Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COHESITY, INC,<br><br>      Plaintiffs,<br><br>v.<br><br>CARTESIAN THEATRE CORP., and DOES 1 - 25,<br><br>      Defendants. | Case No. 4:24-CV-09104-JST<br><br>**DEFENDANT CARTESIAN THEATRE CORP.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS [FRCP. 12(B)(1), FRCP. 12(B)(2), FRCP. 12(B)(3), FRCP. 12(B)(6)] OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT FRCP 12(e) OR IN THE ALTERNATIVE FOR A STAY OR IN THE ALTERNATIVE TO STRIKE, FRCP. 12(e)**<br><br>**Date: October 23, 2025**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 6 (Via Video Conference)**<br>**Judge: Hon. Jon. S. Tigar**<br><br>**Reply Brief Due September 29, 2025, per ECF 41 at 3:15 – 16** |

/ / /

/ / /

/ / /

/ / /

/ / /

TABLE OF CONTENTS

ORDER GOVERNING EVIDENCE ACCOMPANYING THIS REPLY BRIEF: ..........................1

I. INTRODUCTION: ........................................................................................................................1

II. FACTS: ........................................................................................................................................1

III. ARGUMENT: ............................................................................................................................8

    A.    Subject Matter Jurisdiction ...............................................................................................8

    B.    The Brillhart Factors .......................................................................................................11

    C.    General Jurisdiction Over CT ........................................................................................12

    D.    Specific Jurisdiction Over CT ........................................................................................13

    E.    Due Process Concerns Argue For a Stay Pending Safer Border Conditions ........................14

Case 4:24-cv-09104-JST     Document 53     Filed 09/27/25     Page 3 of 18

**Cases**

*Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, 781 F. Supp. 3d 920 ..... 9

*Brillhart* v. *Excess Ins. Co.,* 316 U.S. 491 (1942) .......... 11

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......... 9

*Davis v. Fed. Election Comm'n,* 554 U.S. 724 (2008) .......... 9

*Grupo Dataflux v. Atlas Global Group, L.P.* 541 U.S. 567 (2004) .......... 9

*Lowenstein v. Rooney*, 401 F. Supp. 952 (E.D.N.Y. 1975) .......... 8

*MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118 (2007) .......... 8

*Minneapolis & St. L. R. Co. v. Peoria & P. U. Ry. Co.,* 270 U.S. 580 (1926) .......... 9

*Noem v. Vasquez Perdomo*, No. 25A169, 2025 WL 2585637, at *1 (U.S. Sept. 8, 2025) .......... 14

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) .......... 12

*Rhodes v. Biomet, Inc*., 2020 WL 1955308, at *2 (C.D. Cal. Jan. 22, 2020) .......... 12

*W. Institutional Rev. Bd., Inc. v. Jenkins,* No. 3:17-CV-05523-BHS, 2018 WL 1811364 .......... 12

**Rules**

FRCP 23 .......... 5

FRCP 43 .......... 15

**ORDER GOVERNING EVIDENCE ACCOMPANYING THIS REPLY BRIEF:**

Pursuant to this Court's order of August 7, 2025 (ECF 41), the deadline for filing this brief is September 29, 2025, and "Defendant shall be permitted to submit evidence obtained from Plaintiff during jurisdiction discovery and relevant to Plaintiff's Opposition".

## I. INTRODUCTION:

The parties have engaged in jurisdictional discovery, including CT's founder's deposition. As important as adversarial briefing is, CT believes the evidence speaks clearly and the Court can reach a decision on this motion simply by reviewing the evidence.

This motion asks what happens when a non-attorney sends takedown requests to U.S. companies targeted at infringement of Canadian trademarks in Canada. The evidence does not reveal any attempt to enforce or monetize U.S. trademark rights. At most, the evidence shows (a) clumsy errors by recipient(s) of the takedown requests that could and should have been corrected with a simple email from Cohesity to CT asking that they clarify to the recipient that their notice is limited to Canadian rights and (b) a cautious, good faith, and successful attempt to have each notice clarify that it is Canadian rights and a Canadian mark at issue, some written without the level of disclaimers that a lawyer would insert to eliminate every possible ambiguity.

Despite expedited jurisdictional discovery, Plaintiff found no "smoking gun". There is no demand or suggestion that any action be taken based on U.S. trademark rights. All that exists is cumulative evidence of Canadian-oriented demands being misunderstood.

There are three offramps for this litigation, each of which is supported by the law and facts. First, federal courts are not obligated to hear a declaratory judgment case. Rather, it rests in the sound discretion of the Court. This Court need not resolve the jurisdictional issues to determine that the case is inappropriate for declaratory judgment. Second, there is no case or controversy. Third, neither general nor specific jurisdiction exists. A stay, while not a full offramp, would avoid the Sisyphean task of a tiny company having to litigate against massive law firms while litigating analogous issues against a megafirm in Canada. Failing all of that, compliance with pleading rules should be required.

## II. FACTS:

Cohesity repeatedly explains how successful and/or large it is. *See* Opp. 1:11 ("Cohesity is

1  one of the largest U.S. providers of artificial intelligence…"), ECF 1 (¶¶ 3, 19 – 23). The need to lay
2  this out is quizzical. CT does not dispute that Cohesity is a multi-billion-dollar AI company, as is
3  abundantly clear from their retention and use of Canada's fourth largest law firm in the Canadian
4  action and, in this action, Jones Day, a 2,400-lawyer firm, and Turney Boyd Seraphine, an IP
5  litigation boutique firm. The genius of the Rule of Law is that a small startup and a megacorporation
6  stand before this Court as equals, despite vastly different resources at the disposal of each.

7  However, the Rule of Law gives way to the Rule of Resources. CT is a small Canadian
8  company with limited resources. Faced with possible dilution of its soon-to-issue Canadian mark,
9  CT reached out to Cohesity during the Canadian mark's advertising period (when more economical
10 challenges to registration could still be brought), to find a way to avoid "grave consequences [where]
11 it [CT] can lose its mark for failure to police it", calling that result one that "would cause catastrophic
12 and irreparable harm to CT". Warner Decl. Exh. H. CT never asked for money from Cohesity in
13 exchange for a licensing agreement but instead sought to reach an agreement that prevents dilution
14 of the Canadian mark that would soon register. Two days after the plaintive request that the parties
15 "consummate an agreement", Cohesity told CT that "Cohesity has no further interest in discussions".
16 Warner Decl. Exh. I. With Cohesity rejecting CT's search for a peaceful resolution, CT marshaled
17 its limited resources to initiate Canadian litigation to protect its Canadian Mark, knowing that it
18 would recoup its fees after winning under the Canadian (English) Rule on attorneys' fees.

19 The instant litigation, by contrast, promises at best a pyrrhic victory where CT is left deeply
20 in debt after incurring the million plus dollars that realistically is the low end of expert fees and legal
21 fees in defending a trademark case through a trial where CT is not seeking a recovery. Cohesity is
22 not a reluctant party dragged into litigation but is instead a willing and aggressive participant
23 prepared to and already expending significant resources on litigation in a case where it refused to
24 engage in the face of an offer to negotiate a covenant not to sue over *any* trademark rights in the
25 United States. Exhibit 46 to the Warner Deposition (Produced by Cohesity as Cohesity_000304-6)
26 (Excerpts from Mr. Warner's deposition are all Exh. A to the Shuster Decl., ¶ 2; Exh. 46 is Exh. B).
27 The Canadian case was already a David v. Goliath situation, given the resource disparities.
28 In filing a U.S. case stocked with two high end firms, numerous attorneys, and in-house counsel,

1  David has been compelled to effectively face multiple Goliaths simultaneously in the U.S.– a country
2  where David never asserted trademark rights against Cohesity to begin with. No company should be
3  compelled to forfeit rights because another company foists impossible litigation costs on it by filing
4  a declaratory judgment case over possible rights it has not asserted or threatened to assert. In light
5  of the Canadian rule on fees, CT must retain the resources to pay Cohesity's Canadian legal fees
6  should it lose that case. As a practical matter, if forced to litigate this case through trial, CT would
7  be grievously – personally fatally – harmed. It would be a forced shift from an AI software company
8  to, at best, a trademark assertion entity. This fight is not one CT picked. Indeed, CT has repeatedly
9  offered to be bound in the U.S. by the results of a loss in Canada in exchange for staying the instant
10 case, an offer that Cohesity has ignored. *See* ECF 36 ("CT is open to a stipulation … accept[ing]
11 findings of fact in Canada as binding only CT, and not Cohesity…"); ECF 32 7:2-5.

12         In a sense, this case is about Cohesity erecting a paywall to access to justice – and building
13 that paywall so high that justice is available only to mega corporations like themselves. It is only
14 through this lens that CT can understand why Cohesity would refuse a one-sided offer whereby
15 Cohesity wins in the US if it wins in Canada, but Cohesity's rights and claims are unaffected if CT
16 wins in Canada. By litigating simultaneously in both countries, Cohesity has made it so that CT
17 cannot count on recovery of its Canadian attorneys' fees to pay for the U.S. litigation.

18         The Opposition describes the status and validity of the trademarks in this case, but no
19 substantive response to that description is required, as this motion raises jurisdictional, venue and
20 pleading grounds without reference to who should prevail should the substantive issues be reached.

21         The Opposition then walks through the actions of the parties, putting a pro-jurisdictional spin
22 on the evidence. We address only those allegations that include an allegation relating to the United
23 States, but even so CT notes the evidence is before the court, clear and non-technical in nature, and
24 readily amenable to the Court's analysis without the need to credit how the parties spin it. That said,
25 CT provides its interpretation of the evidence.

26         The factual history is difficult to track in narrative form. A timeline is more accessible:
27 2/25/2020     CT applies for Canadian trademark registration. Warner Decl. Exh. A.
28 8/12/2024     During the Canadian advertising period while Cohesity could oppose issuance of the

| | | |
|---|---|---|
| | | Canadian CT mark before the Canadian Intellectual Property Office ("CIPO"), CT writes to Cohesity seeking a solution saying it is "generally amenable to licensing CT's trademark for Canadian domestic usage." Warner Decl. Exh. B. |
| | 8/22/2024 | Jones Day says a response to the licensing offer would be made "within the next two weeks". Warner Decl. Exh. E. |
| | 8/29/2024 | CT applies for US trademark registration. Raimer Decl. Exh. G. |
| | 9/10/2024 | CT seeks engagement by Cohesity in settlement talks. Warner Decl. Exh. H. |
| | 9/12/2024 | Cohesity says "Cohesity has no further interest in discussions." Warner Decl. Exh. I. |
| | 10/4/2024 | CT Canadian trademark is registered. Warner Decl. Exh. A. |
| | 10/7/2024 | CT files the Canadian Proceeding. Furtula Decl. ¶ 3. |
| | 10/7-15/2024 | CT sends notifications such as to Meta, Amazon.ca, Alphabet, Github, all carefully referencing the Canadian mark only. Warner Decl. Exhs. J – S. |
| | 11/18/2024 | Cohesity commences a counterclaim in the Canadian Proceeding. Furtula Decl. ¶ 5. |
| | 12/17/2024 | Cohesity files this litigation. ECF 1. |
| | 1/17/2025 | CT offers to negotiate covenant not to sue in US. Warner Depo. Exh. 46. |

Cohesity alleges that "on September 5, 2024, Mr. Warner specifically advised Cohesity of CT's purported U.S. trademark rights … stating it could be catastrophic for Cohesity going public if it did not enter into an agreement with CT". Opp. 1:26 – 28. The documentary evidence proves the term "catastrophic" referenced harm to the CT – namely weakening of the Canadian CT Mark. Warner Decl. ¶ 49.[1] Moreover, the cited evidence, "Kiedrowski Decl. ¶¶ 3-4", is hearsay to which CT objects – and even if admissible, does not state what the Opposition cites it for. Rather than have Ms. Couture sign a declaration, Cohesity uses Ms. Kiedrowski's hearsay declaration to describe what "Ms. Couture explained [to be] the purpose of the call". Ms. Kiedrowski goes on to summarize

---

[1] The insinuation that "Mr. Warner's Declaration … appears designed to circumvent the Local Rules' limit of 25 pages for motions…." Opp. 25:12 – 14 is unseemly. It is my practice for the declarant write as much of their own declaration as possible (language such as authenticating exhibits as "true and correct copies" is guided by counsel), to ensure that it is their testimony and not mine sitting over their signature. Mr. Warner is a person with a lot to say about this case, and describing the 24 exhibits added to the length. If legal argument or conjecture is present in that declaration, counsel apologizes to the Court.

1  and in part quote an alleged statement by Mr. Warner that would have been a statement promoting
2  his interests – namely that CT has evidence supporting its claimed US priority date. This is not a
3  "Statement Against Interest" as interest in a statement is measured "when made". FRCP 23(b)(3)(A).
4  For the same reasons, the alleged statement in paragraph 4 is hearsay. However, even if those
5  statements were true, they do not comprise a threat to assert U.S. trademark rights. All they reveal
6  is a company seeking a win-win non-judicial solution in good faith.

7       The Opposition again trots out the "fallout would inevitably not be contained domestically"
8  quote. This misreading is explained at length in Mr. Warner's declaration. The email "when read in
9  full, makes it clear that [CT] was referencing the impact of losing Canadian litigation over the
10 Canadian CT Mark", and in particular the required SEC disclosures arising from such a loss. Warner
11 Decl. ¶ 56. A review of Warner Decl. Exh. H, the original document the language is taken from,
12 confirms this with clarity. Cohesity seems to be relying on the idea that highly attenuated impacts in
13 the United States are sufficient to create jurisdiction, but such is not the case. If the mere fact that
14 losing foreign litigation might trigger tax or reporting requirements in the U.S. were sufficient to
15 confer jurisdiction, no overseas litigation could ever be filed against a U.S. person or entity without
16 triggering U.S. jurisdiction – an absurd result.

17       Cohesity then claims that "CT followed its threats with … 'notices of infringement' and
18 contacting Cohesity's U.S. business partners and service providers, demanding they stop carrying or
19 supporting Cohesity's HELIOS products and services based on alleged infringement." This is true
20 but incomplete. Canada was consistently identified as the issuing authority for the trademark and
21 therefore as a matter of law a limit on the demand's geographic reach, and Cohesity points to no
22 instance where U.S. rights were referenced in such a notice.

23       Cohesity characterizes CT's statement that it sent "approximately a thousand takedown
24 requests to various platforms" as evidence of guilt by numerosity Opp. 2:5 – 3:6. However, nearly
25 all of those notices had nothing to do with Cohesity's Helios product. Warner Decl. ¶ 52. CT does
26 not dispute that many of the notices it sent to police its Canadian trademark were sent to U.S.
27 companies, many of which are in California. However, the interactions with these companies were
28 expressly aimed at activities within Canada. Warner Decl. ¶ 29.

Cohesity then seizes upon an interesting but unavailing theory: Meta (via their Facebook and Instagram units) and Amazon Web Services misunderstood the notices as potentially encompassing U.S. activities. The notices expressly reference the Canadian mark and none reference U.S. rights. Warner Decl. Exhs. J (Amazon.ca legal department); N (Facebook); Q (Instagram). Two third parties misunderstanding the contents of a takedown request does not create jurisdiction any more than a bailiff erroneously hearing "guilty" when a defendant pleads "not guilty" would support a conviction. The documents all point the recipient to Canada. DLA Piper, on behalf of Amazon Web Services, admits as much – "In your email you allege that Cohesity … infringes CT's Canadian trademark…" – prior to speculating that the assertion of the Canadian mark appears to target consumers in the United States. Raimer Decl. Exh. D. This Court can analyze the takedown requests itself and need not credit a misreading by a third party as creating jurisdiction.[2]

Cohesity then notes that CT filed a use-based U.S. trademark application. The relevance of this cannot be understood without appropriate context. In CT's principal's deposition (Mr. Warner) on August 28, 2025, Mr. Warner was asked if he provided a covenant not to sue. Warner Depo. 52:11 – 16. Mr. Warner responded that "it was the 17th of January 2025, that that negative covenant was provided to you and your co-counsel."[3] In that document, Exhibit 46 to the Warner Deposition (Produced by Cohesity as Cohesity_000304-6, Shuster Decl. Exh. B), CT stated that it "is willing to negotiate terms of settlement of [this litigation] that provide your client with the comfort of a negative covenant that CT does not assert any trademark rights against Cohesity in the United States…". That offer "was not accepted". Warner Depo. 172:18. Cohesity's failure to engage with an offer delivering all the relief demanded in this suit shows a true lack of urgency – and a lack of controversy. Indeed, it could be interpreted as showing that this action was commenced, or at least continues to be maintained, primarily to create leverage in the Canadian Proceeding.

---

[2] DLA Piper, which authored Exh. D to the Raimer Decl., also represents Cohesity, which makes their misreading all the more questionable. Warner Depo. 156:5, 180:15; CT Request for Judicial Notice ("CT RJN") ¶ 1.

[3] It was only upon hearing Mr. Warner's testimony at deposition that counsel for CT recognized the significance of the January 17, 2025, letter. Shuster Decl. ¶ 4. Pursuant to the terms of ECF 41, this evidence, adduced (testimony) and produced (document) as part of Plaintiff's jurisdictional discovery, is permissible as part of the reply.

1    Moreover, this offer came well <u>after</u> the August 29, 2024 filing of CT's U.S. trademark
2    application. Raimer Decl. Exh. G. CT thus offered to waive any rights to claim that Cohesity
3    infringed its trademark rights in the United States half a year *after* it filed for the U.S. trademark.

4    At this point, having been rejected in its attempt to exchange a dismissal for what is in
5    essence a win by Cohesity, and Cohesity having twice filed for an extension of time to oppose
6    issuance of the U.S. application (CT Request for Judicial Notice ("CT RJN") Exh. A), CT
7    nonetheless made a second offer: A covenant not to sue for any infringement up to "any issuance of
8    a U.S. trademark registration to CT". Raimer Decl. Exh. H.

9    It was unknown at that point whether a U.S. trademark would issue and Cohesity's earlier
10   rejection of a covenant not to sue in the U.S. for any trademark infringement claims raised concerns
11   about Cohesity's motives in acting irrationally. The offer that Cohesity characterizes as "CT …
12   suggest[ing] that it will seek damages for infringement after this registration issues" does nothing of
13   the sort. It was made on Feb. 13, 2025, before the application was even assigned to an examiner. CT
14   RJN ¶ 2. CT had offered to waive <u>all</u> trademark claims against Cohesity existing at the time the
15   matter was filed, without knowing whether a registered mark would ever issue, and if so, what it
16   would encompass. Cohesity's refusal to take "yes" for an answer in January 2025 meant that CT did
17   not see a rational basis for Cohesity's actions. By this point Cohesity had engaged in behavior
18   incomprehensible to CT, and with the registration of a U.S. mark a distant hope and Cohesity's
19   motives unknown, it made sense to limit the offer to the actual rights at issue in the litigation.

20   Cohesity next turns to a litany of weak connections to California in an effort to show
21   California jurisdiction is proper. These seem to fall into two categories: Demands sent to third parties
22   (or Cohesity) and "partnerships" with third parties. The demands to third parties are all in evidence,
23   and we need not reexamine them. They are clear in identifying Canadian rights as the thing at issue,
24   and the Court is as well positioned as the parties are to read and interpret them.

25   Cohesity's point that CT contacted Cohesity's employees omits a crucial element. The
26   deposition testimony was: "Q: You emailed 13 Cohesity employees on September 3rd, 2024,
27   regarding the adoption of Cohesity's DataProtect Platform in Canada? A: Yes." Raimer Decl. Ex. C
28   134:5 – 8. Even if those employees were located in the United States (they were not, and the emails

all noted that they were "Account Executive[s] for Cohesity in Canada", Raimer Decl. Exh. I), it would no more create jurisdiction than would contacting a California reporter about her article running only in Canada. In an age where California and U.S. companies provide services globally, an inquiry about services outside of the United States is hardly submission to be sued in the U.S. district where a service provider is located. To hold otherwise creates an intolerable drag on the U.S. economy, adding a judicial "jurisdiction tariff" to the export of any services or information.

With regard to CT's "Leadership Team" having ties to California, CT agrees with Cohesity that the relevant information is in the Warner Decl. 82:16 – 84:15. The people identified are Gary Shuster (CT's counsel), a Vancouver resident (Shuster Decl. ¶ 5), and Dean Becker, who has not advised CT since "Maybe two years ago" and who does not have a known California address. Warner Depo. 83:11 – 19.

Finally, there is the issue of "partnerships". It is clear, and Cohesity does not claim otherwise, that these are not partnerships in the sense of a general partnership. Rather, it is a common business practice for U.S. companies to seek alliances with startup companies at home and abroad as a way of ensuring that should the company succeed, the company's technology will be compatible with their products and the company will be conversant with the U.S. company's products and more likely to use them. The agreements reveal as much. *See, e.g.,* Raimer Decl. Exhs. J, L, M, N, K, W.

### III. ARGUMENT:

#### A. Subject Matter Jurisdiction

"The Declaratory Judgment Act, 28 U.S.C. § 2201, of course, neither creates nor enlarges jurisdiction; it merely creates an additional remedy where an actual controversy already exists." *Lowenstein v. Rooney*, 401 F. Supp. 952, 959 (E.D.N.Y. 1975); see *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120 (2007) (Article III's limitation is reflected in the "actual controversy" requirement of the Declaratory Judgment Act).

Jurisdiction is determined by the facts as of the date the complaint was filed. "It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought. This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." *Grupo Dataflux v. Atlas Global Group,*

*L.P.* 541 U.S. 567 (2004), 570–571 (diversity/subject matter jurisdiction) (internal punctuation and citations omitted); *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734 (2008) (Article III "standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed"); *Minneapolis & St. L. R. Co. v. Peoria & P. U. Ry. Co.,* 270 U.S. 580, 586 (1926) (personal "jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought").

While documents created subsequent to the filing may be probative of the veracity of Cohesity's beliefs at the time of filing, such as refusing a covenant not to sue, defects at the time of filing cannot be repaired by events subsequent to filing. The suit was filed December 17, 2024. Paragraphs 8 (Exh. G), 9 (Exh. H), 13 (Exh. L), and 14 (Exh. M) of the Raimer declaration postdate the filing date, are not probative of Cohesity's beliefs as of the filing date and are therefore irrelevant to the Article III and jurisdiction determinations.

The evidence as of the filing date includes no demand for compensation or threat of U.S. suit by CT. Instead, it consists of a series of attempts to resolve the matter, such as those on August 12, 2024 ("If the parties can come to an agreement I am generally amenable to licensing CT's trademark for Canadian domestic usage." Warner Decl. Exh. B) and September 10, 2024 ("CT has been holding off as long as it can in order to facilitate an amicable resolution." Warner Decl. Exh. H).

Cohesity is correct that a concrete threat of a trademark suit is not required in a declaratory relief action. However, The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 (2013) (emphasis in original; internal punctuation omitted); *Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, 781 F. Supp. 3d 920, 938 (N.D. Cal. 2025).

Cohesity points to the "position and perceptions of the plaintiff" as a critical element in determining whether standing exists. The evidence subsequent to the filing date reveals that Cohesity's apprehension of harm from CT was nearly zero in the period after filing. Given the lack of material improvement in Cohesity's position since filing, this gives rise to a strong inference that Cohesity did not have an apprehension of harm from CT at the time of filing (though the filing has

given rise to actual financial and resource harm to CT).

Through this lens, we see that Cohesity's refusal weeks after filing to engage with an offer to negotiate a covenant not to sue over U.S. trademark rights is hardly evocative of a party fearing a "certainly impending" lawsuit. Exhibit 46 to Warner Depo. The same is true of Cohesity's termination of settlement talks prior to filing. Warner Decl. Exh. I. CT's repeated offer to allow a loss in the Canadian proceeding to automatically trigger a loss in the U.S. case has never, to CT's knowledge, been seriously considered. A party with a sufficiently real fear of litigation as to chill its activity simply does not behave with Cohesity's cavalier dismissiveness to a series of offers and opportunities to eliminate any risk of litigation. Other than US litigation draining CT of the resources it needs to pursue the Canadian litigation, it is difficult to find an explanation for Cohesity's conduct.

Cohesity is in a financial position that is literally many orders of magnitude stronger than CT. When considering the "position … of the plaintiff", it is clear in this case that plaintiff has sufficient legal and financial firepower to deter litigation by a company unable to hire arms-length-priced U.S. counsel to defend this case. While we do not have access to the legal bills incurred by Cohesity to date, it is a near certainty that they have incurred more in litigation costs to date than it might have taken to purchase all trademark rights they claim to be terrified about.

Sometimes things are exactly as they appear. The level of hostility Canadians perceive from the United States is high. CT's principal does not wish to risk travel to the United States. Warner Decl. ¶¶ 63 – 76. Far from leaping into a counterclaim for infringement, CT struggled to find counsel and ultimately seeks only dismissal. CT sued in Canada almost immediately after receiving a registered trademark it waited four years for yet has assiduously attempted to avoid U.S. litigation. The throughline in the evidence is the focus of a Canadian company on Canadian trademark rights. CT is focused on a stable, welcoming market: Canada. Whether intentional or not, the instant suit in the U.S. is Cohesity's best defense against the action CT is bringing in Canada: By forcing CT to invest scarce time and resources into litigation brought in the U.S., CT may be forced to give up its rights, and even abandon the Canadian litigation, rather than let attorneys' fees bankrupt them.

Cohesity has taken a strident and confident position: It need not settle or slow the U.S. litigation because CT's U.S. mark "is void *ab initio*" (Opp. 8:26 – 28), Cohesity "is not aware of any

1  prior use by [CT], let alone use that would give it priority nationwide" (EFS 1, 2:5-6), "even if [CT]
2  could … show priority of use … in the United States, there is no likelihood of confusion" (EFS 1,
3  2:9-11); "there are numerous third parties using the trademark HELIOS for software related products
4  and services, further reducing any likelihood of confusion" (EFS 1, 2:16-19), and as of the date of
5  filing, Cohesity had a registered mark that "entitles Cohesity to a presumption that it has the
6  exclusive right to use the registered trademark" (EFS 1, 8:13-15). As discussed above, Cohesity has
7  let every settlement overture land with a thud. At the time of filing, CT had done nothing to indicate
8  that it would sue or otherwise enforce U.S. rights against Cohesity. In and after the filing, Cohesity
9  has acted consistently with a genuinely and stridently held belief that CT cannot successfully sue
10 Cohesity in the U.S. As CT has not threatened or signaled a desire to initiate U.S. litigation and
11 Cohesity believes that the mark is invalid in any case, there is no controversy.

### B. The Brillhart Factors

Judicial economy does not stop at the border and putting parties to the expense of litigating analogous or identical issues in two forums when a decision in one forum would terminate proceedings in both is a poor use of litigant and judicial resources. While Cohesity takes the position that CT will not be legally bound in the United States by a Canadian verdict, CT has repeatedly made clear that it is willing to be bound in the United States if it incurs a substantive loss in the Canadian proceeding. Whether done via stipulated order or a covenant provided to Cohesity, it would be a trivial matter to bind CT.[4] This position brings the case squarely under the "avoid duplicative litigation" prong of *Brillhart* v. *Excess Ins. Co.,* 316 U.S. 491 (1942). The Canadian case was first filed, further advanced, and if this Court so conditions a dismissal or stay, a victory by Cohesity in Canada resolves all issues in this suit in its favor prior to lifting the stay.

*Brillhart* did not involve foreign litigation. The Supreme Court has held that avoiding the "flow of litigation into the United States" should factor into choice of forum (and presumably the election to hear a declaratory relief case) to avoid rulings that "would increase and further congest already crowded courts." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 252 (1981).

---

[4] CT believes that this case should be dismissed or stayed based on the evidence, but CT does not object to conditioning a dismissal or stay of this matter on CT's agreement to such an arrangement.

The "avoid needless determination of state law issues" prong is hardly as clear as Cohesity says. This case does not involve any registered mark, instead addressing exclusively common law rights, including state common law rights. As a win by Cohesity in Canada would extinguish any common law state claims against it by CT, this prong favors abstaining from hearing the case.

Similarly, filing in the United States when a case was pending on the same issues in Canada presents a variant on the forum shopping concerns: Leveraging the far higher cost of litigation in the United States to drain resources that would otherwise go to the case in Canada. Forum shopping is an attempt to use the selection of a court system (particularly single judge divisions) to pick how the law applies or to use the selection of a location for some form of advantage, such as the composition of the jury pool. Just like forum shopping, filing a declaratory judgment action in one of the most expensive districts in the United States and staffing it with countless lawyers from two different law firms and in house counsel is evocative of an attempt to use aspects of the filing of litigation for a purpose other than dispute resolution.

C. **General Jurisdiction Over CT**

A "defendant's notice of appearance prior to filing a motion to dismiss does not constitute a waiver of personal jurisdiction, as long as the defense is raised in an instant motion to dismiss [in] the first responsive pleading." *W. Institutional Rev. Bd., Inc. v. Jenkins,* No. 3:17-CV-05523-BHS, 2018 WL 1811364, at *3 (W.D. Wash. Apr. 17, 2018). "Under Rule 12(h)(1), a defendant waives a personal jurisdiction challenge if he does not raise it in a responsive pleading or in a motion to dismiss that precedes the responsive pleading." *Rhodes v. Biomet, Inc.*, 2020 WL 1955308, at *2 (C.D. Cal. Jan. 22, 2020). As the file shows, this Court ordered that CT show cause why default should not be entered unless counsel appeared by July 8, 2025. ECF 26. Counsel appeared that day, barely before the deadline, for reasons related to the health of his partner. Shuster Decl. ¶ 6. In the first substantive filing, a CMC statement, counsel explained that after confirming compliance with Rule 11, "counsel will move to challenge personal jurisdiction over CT" and "to dismiss based on the absence of a justiciable case or controversy". ECF 32. After conducting the required Rule 11 diligence, counsel for CT filed a motion challenging jurisdiction. ECF 37.

Cohesity wants to have it both ways. It said Cohesity's attempt to respond to this litigation

1  prior to locating counsel was a nullity: "This Motion was not filed through a member of the bar of
2  this Court… Accordingly, the Motion is invalid, and … should be stricken." ECF 15, 1:15-18.
3  "Because Cartesian Theatre's 'Pro Se' [Motion to Stay] … were not filed through a member of the
4  Bar of this Court … they are invalid and should be stricken." ECF 21, 1:12 – 14. Now that there is
5  a benefit to Cohesity, it argues that "CT appeared time and time again in this case". Opp. 10:8-10.

CT offered Cohesity all it asked for in its January 17 letter (although inartfully written) by offering to work out a covenant not to sue, and Cohesity preferred to push forward with the litigation. CT attempted to find counsel, only to be quoted rates that would result in disciplinary action if offered in its home nation of Canada. Warner Decl. ¶ 5 and fn 1. CT continued to search for counsel, but the posture of the case prevented litigation financing or a contingency fee. Warner Decl. ¶ 6. Ultimately, at the precipice of being priced out of access to justice, CT was able to obtain counsel by convincing a friend that access to justice was an important enough cause to distract from caregiving for his partner. Warner Decl. ¶ 7; Shuster Decl. ¶ 8.  These are simply not circumstances where justice demands CT lose rights because it couldn't afford to hire a national law firm on day one.

### D. Specific Jurisdiction Over CT

CT specified Canadian trademark rights in every takedown request. CT sent requests to California-based entities but aimed at Canadian trademark rights within Canada. Cohesity seeks a holding that a California-based company infringing Canadian rights in Canada cannot be stopped, whether by demanding it stop or sending notices to those assisting in the infringement in Canada, without simultaneously triggering jurisdiction in California. The absurdity of such an outcome is illustrated by putting the shoe on the other foot. If a Vancouver resident wrote a libelous article in a Canadian newspaper about a California resident and that California resident wrote to the newspaper demanding a retraction, should that California resident be subject to suit for declaratory relief in Canada? A careful review of the actual communications from CT shows an almost obsessive caution in identifying the Canadian mark as the subject of the communication. If the rule

1  is that jurisdiction attaches regardless of the level of caution to specify that it addresses only
2  foreign acts based on foreign rights, any incentive to exercise such caution would disappear.
3        Cohesity points to relationships where American companies, in an attempt to get startups to
4  use their technology, offer startups "partnerships" that are in reality business development for the
5  American company. If vulnerability to suit in the U.S. attaches to this marketing, the ability of
6  those American companies to market to foreign entities will be impaired.
7        Cohesity points to perceived ambiguities in the notices to third parties, and to
8  misinterpretations by those third parties of the notices, as evidence that it has a dispute with CT over
9  U.S. trademark rights. What is missing from the record is any effort by Cohesity to engage with CT
10 in correcting any misperceptions. CT would have sent clarifications to any party upon Cohesity's
11 request, clarifying that it was addressing only the Canadian mark, and even then only within
12 Canada's territorial boundaries. A case or controversy does not arise when parties are in agreement
13 but one of those parties misunderstands the agreement to be disagreement. The variety of forms of
14 trademark complaints required by various providers, as shown in the Exhibits to the Warner
15 Declaration mean that a single letter or form of complaint could not be used. If some of those
16 complaints are misconstrued or inartfully written, the correct course of action is to seek clarification
17 from CT, not to move directly from agreement subject to a misunderstanding to federal litigation.

18       **E.  Due Process Concerns Argue For a Stay Pending Safer Border Conditions**

19       Mr. Warner's concerns about being able to safely enter the United States (Warner Decl. ¶¶
20 63 – 76) were explored at his deposition. Asked if he had ever been denied entry, he answered
21 "yes" and explained it was because the border agent seemingly arbitrarily "was satisfied that I
22 would be taking an American's job by volunteering my afternoon to assemble … Ikea furniture
23 [for his uncle]." Warner Depo. 137:8 – 20. He was "not aware that they" racially profiled him
24 (Warner Depo. 139:16-23), but racial profiling thought impermissible then is now permissible at
25 the border. *Noem v. Vasquez Perdomo*, No. 25A169, 2025 WL 2585637, at *1 (U.S. Sept. 8,
26 2025), Kavanaugh, J. concurring (approvingly stating that the "Government sometimes makes
27 brief investigative stops to check the immigration status of those who gather in locations where
28 people are hired for day jobs; who work or appear to work in jobs such as construction,

landscaping, agriculture, or car washes … and who do not speak much if any English."). Whatever concerns that existed prior to *Noem v. Vasquez Perdomo* are now an order of magnitude higher, as CBP can now detain Mr. Warner for racial reasons without fear of judicial reproach. FRCP 43(a) clarifies the strong policy in favor of live, in-person testimony, and it seems unlikely that the arbitrary creation of uncertainty and fear at the U.S. border was what the authors had in mind as "good cause in compelling circumstances" for remote testimony when adopting the rule.

A stay does not prejudice Cohesity – particularly when coupled with CT's proposed covenant not to sue in the U.S. in the wake of a loss in Canada. If Cohesity wins in Canada, it wins everything it seeks in this litigation. If Cohesity loses in Canada, they will globally rebrand anyhow (at least in Canada, but for cloud services, such a rebranding would likely be global). They can resume this litigation should they decide to use different branding in Canada than in the rest of the world. Functionally, CT's proposed covenant turns the Canadian litigation into a binding arbitration of its rights – but not Cohesity's rights – in the United States.

**OBJECTIONS TO KIEDROWSKI DECLARATION**:

Paragraph 2: Paragraph 3: Ms. Couture's and Mr. Warner's alleged statements are hearsay. Paragraph 4: Mr. Warner's alleged statements are hearsay.

.

DATED: September 27, 2025            GARY SHUSTER

By: /s/ Gary S. Shuster

2301-1228 Marinaside Crescent
Vancouver BC V6Z 2W4
Canada
Attorneys for Cartesian Theatre