1  Megan Whyman Olesek (State Bar No. 191218)
   Megan.Whyman.Olesek@ThompsonHine.com
2  Jacob S. Zweig (State Bar No. 296129)
   Jacob.Zweig@ThompsonHine.com
3  Thompson Hine LLP
   155 Bovet Road, Suite 600
4  San Mateo, California 94402
   Telephone: (650) 521-5930
5
6  *Attorneys for Plaintiff*
   *Cohesity, Inc.*
7

8              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
9                   **OAKLAND DIVISION**

10
   COHESITY, INC.,                          Case No. 4:24-cv-09104-JST
11
                  Plaintiff,
12                                          **PLAINTIFF COHESITY, INC.'S**
           v.                               **OPPOSITION TO DEFENDANT**
13                                          **CARTESIAN THEATRE CORP.'S**
   CARTESIAN THEATRE CORP. and              **CONTINGENT**
14 DOES 1 – 25.,                            **MOTION TO DISMISS**

15                Defendants.               Hearing: March 5, 2026
                                            Time: 2:00 p.m.
16                                          Place: TBD
                                            Judge: Hon. Jon. S. Tigar
17

18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................. 1

II.     FACTUAL BACKGROUND ........................................................................................... 1

III.    ARGUMENT ................................................................................................................... 3

        A.      Cartesian Theatre Has Not Met Its "Formidable Burden" to Demonstrate Lack of
                Subject Matter Jurisdiction ..................................................................................... 4

                1.      The Contingent Covenant Does Not Adequately Cover Future Activities
                        and Products ................................................................................................ 5

                2.      The Contingent Covenant Is Also Insufficient to Moot the Case or
                        Controversy Because it Does Not Bind All Relevant Entities ..................... 7

                3.      Cartesian Theatre's Present and Past Conduct Further Demonstrate That
                        It Is Not "Absolutely Clear the Allegedly Wrongful Behavior Could Not
                        Reasonably Be Expected to Recur" ............................................................. 8

                4.      The Conditional Covenant Does Not Make It "Absolutely Clear the
                        Allegedly Wrongful Behavior Could Not Reasonably Be Expected to
                        Recur" Because Cartesian Theatre Could Argue It Is Voidable Due to
                        Duress ........................................................................................................ 11

        B.      The Court Should Not Stay the Case Pending Rulings on the First Motion to Dismiss
                and this Motion ....................................................................................................... 12

IV.     CONCLUSION ............................................................................................................. 14

1

## TABLE OF AUTHORITIES

2 **Cases**

3 *Al Otro Lado v. Wolf*,
   952 F.3d 999 (9th Cir. 2020) ............................................................. 12, 13

4

5 *Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) ............................................................................ passim

6 *Aylus Networks, Inc. v. Apple Inc.*,
   No. C-13-4700 EMC, 2015 WL 12976113 (N.D. Cal. June 2, 2015) ......................................... 13

7

8 *Changzhou AMEC E. Tools & Equip. Co. v. E. Tools & Equip., Inc.*,
   No. EDCV 11-00354 V, 2012 WL 3106620 (C.D. Cal. July 30, 2012)....................................... 11

9 *ChromaDex, Inc. v. Elysium Health, Inc.*,
   No. SACV 16-02277-CJC(DFMx), 2017 WL 7080237 (C.D. Cal. Nov. 28, 2017) ...................... 5

10

11 *City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 (1982) ................................................................................. 4

12 *Clinton v. Jones*,
   520 U.S. 681 (1997) ............................................................................... 12

13

14 *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
   528 U.S. 167 (2000)................................................................................. 4

15 *Greco v. Uber Techs., Inc.*,
   No. 4:20-CV-02698-YGR, 2021 WL 134578 (N.D. Cal. Jan. 14, 2021) ................................... 13

16

17 *Humu, Inc. v. Hulu, LLC*,
   No. 19-CV-00327-HSG, 2019 WL 3220271 (N.D. Cal. July 17, 2019) ..................................... 5

18 *In re Interstate Bakeries Corp.*,
   751 F.3d 955 (8th Cir. 2014) ............................................................... 7, 8

19

20 *Johnson v. Int'l Bus. Machines Corp.*,
   891 F. Supp. 522 (N.D. Cal. 1995) ........................................................ 11

21 *Murphy v. Hunt*,
   455 U.S. 478 (1982)................................................................................ 4

22

23 *Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................. 13

24 *Perez v. Discover Bank*,
   No. 20-CV-06896-SI, 2023 WL 1805213 (N.D. Cal. Feb. 7, 2023) ................................ 12, 13

25

26 *Zaborowski v. MHN Gov't Servs., Inc.*,
   2013 WL 1832638 (N.D. Cal. May 1, 2013) ............................................. 13

27 **Rules**

28 Civil L.R. 7-4(a)(5) ............................................................................... 12

## I.    INTRODUCTION

Defendant Cartesian Theatre Corp. ("Cartesian Theatre" or "CT" or "Defendant") moves to dismiss Plaintiff Cohesity, Inc.'s ("Cohesity" or "Plaintiff") complaint for a declaratory judgment that Cohesity does not infringe Cartesian Theatre's HELIOS trademark.  However, Cartesian Theatre's proposed contingent covenant not to sue does not meet Cartesian Theatre's "formidable burden" required to show that the Court is divested of subject matter jurisdiction.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013) (citation omitted).  As presented, the covenant not to sue is too narrow and is not, as *Already* requires, "unconditional."  *See id.* at 93.  Moreover, despite Cartesian Theatre's assertion that it is only interested in Canada, considering Cartesian Theatre's past enforcement activities and present assertions as to the intent behind its proposed covenant not to sue, Cartesian Theatre cannot show that it is "absolutely clear [its] allegedly wrongful behavior could not reasonably be expected to recur."  *See id.* at 91.  Cartesian Theatre also requests that the Court stay the proceedings but does not even attempt to meet its legal burden to show that a stay would be warranted.  Cohesity respectfully requests that the Court deny Cartesian Theatre's motions to dismiss and for a stay.

## II.    FACTUAL BACKGROUND

Cohesity filed its complaint for a declaratory judgment of non-infringement of Cartesian Theatre's HELIOS trademark on December 17, 2024.  ECF No. 1.  Cohesity did so following a campaign by Cartesian Theatre in which Cartesian Theatre contacted numerous Cohesity partners, accusing Cohesity of infringing its HELIOS marks, and following demands by Cartesian Theatre that Cohesity stop using its own HELIOS marks in connection with Cohesity's enterprise data protection platform.  *See, e.g.*, ECF No. 1 at ¶¶ 29-36.

As set forth in Cohesity's complaint, Cohesity is confident that its rights will be vindicated based on, among other things, a lack of likelihood of consumer confusion due to: (a) the stark differences between Cohesity's offerings (Cohesity's Helios is an interface for its enterprise data protection platform, *see id.* at ¶ 42) vis-à-vis Cartesian Theatre's offerings (Cartesian Theatre's Helios is a "music discovery engine" that "allow[s] searching of large commercial music libraries by using music itself as the search key," *see* https://heliosmusic.io/pages/product/, last visited on

January 27, 2026); (b) the sophistication of Cohesity's customers, who are tech-savvy and discerning in their research and purchase of Cohesity's products (ECF No. 1 at ¶ 43); (c) the different marketing channels used by Cohesity vis-à-vis Cartesian Theatre (*id.* at ¶ 44); and (d) the fact that there are numerous third parties using the name HELIOS for software-related products and services in the United States (*id.* at ¶ 45). Cohesity also alleges that Cartesian Theatre does not have trademark rights in the HELIOS name that pre-date Cohesity's trademark rights in the HELIOS name in the United States. (*Id.* at ¶ 41.)

Cartesian Theatre initially moved to dismiss or stay Cohesity's complaint on July 27, 2025, arguing, among other things, that Cartesian Theatre's enforcement efforts were intended only to enforce its rights in its Canadian HELIOS mark, and therefore the Court lacks subject matter jurisdiction over Cohesity's declaratory judgment claim directed to its U.S. trademark rights, or, in the alternative, that this case should be stayed pending resolution of Canadian litigation brought by Cartesian Theatre against Cohesity for infringement of its Canadian HELIOS mark (the "Canadian Proceeding"). ECF Nos. 37, 37-1 (the "First Motion to Dismiss"). Cohesity opposed the First Motion to Dismiss, demonstrating in its opposition brief that Cartesian Theatre's campaign was not limited to Canada and had, in fact, been directed specifically to U.S. websites and platforms, and included "successful and attempted takedowns of Cohesity's U.S.-targeted materials." ECF No. 48 at 14. Cohesity also noted that "CT filed a U.S. trademark application [for HELIOS] a few weeks after its first communication with Cohesity's counsel." *Id.* CT maintains that it has U.S. rights in its HELIOS mark, having allowed its application to issue on September 16, 2025, as U.S. Trademark Registration No. 7,943,702 for HELIOS. *See* ECF No. 60.

Following discovery on the jurisdictional issues (*see* ECF No. 41), Cartesian Theatre has for the most part resisted participating in further discovery. Although Cartesian Theatre responded to written discovery requests served by Cohesity in October and November of 2025, these responses are deficient. (Declaration of Jacob Zweig ("Zweig Decl.") at ¶ 3 and Ex. 1.) Cartesian Theatre has not produced any additional documents since an early document production it made in connection with jurisdictional discovery. (*Id.* at ¶ 2.) Further, Cartesian Theatre's early document production is deficient. (*see id.* at ¶ 3 and Ex. 1.)

1    Shortly after Cohesity sent Cartesian Theatre a letter regarding Cartesian's Theatre's

2    discovery deficiencies, counsel for Cartesian Theatre contacted Cohesity's counsel and stated that

3    Cartesian Theatre intended to move for a stay of discovery pending a ruling on the First Motion to

4    Dismiss. (*Id.* at ¶ 4 and Ex. 2.) Before the parties were able to meet and confer regarding

5    Cartesian Theatre's intended motion, Cartesian Theatre filed the instant motion (the "Second

6    Motion to Dismiss").[1] (*Id.* at ¶ 5.)

7    Cartesian Theatre styles the Second Motion to Dismiss as "contingent" on the Court's

8    denial of the First Motion to Dismiss. ECF No. 65-1 at 2. The Second Motion to Dismiss attaches

9    a "contingent" covenant not to sue (the "Contingent Covenant") which Cartesian Theatre asserts

10    "will come into force, eliminating Article III jurisdiction" should the Court deny the First Motion

11    to Dismiss. *Id.* The Contingent Covenant provides, in relevant part, as follows:

12    
> CT unconditionally and irrevocably covenants to refrain from making any claim(s)
> or demand(s) against Cohesity or any of its related business entities including
> distributors and employees of such entities and all customers on account of any
> possible cause of action based on or involving trademark infringement, unfair
> competition, or dilution, under U.S. state or U.S. federal law based on Cohesity's
> use of the term "HELIOS" in any of its current and/or previous services and
> products, and any colorable imitations thereof, regardless of whether that service
> or product is produced or otherwise used in commerce before or after the Effective
> Date of this Covenant.

17    ECF No. 65-3 at 6. The Contingent Covenant states that Cartesian Theatre's reasons for granting

18    the Contingent Covenant are that "CT is currently focused on the Canadian market and recognizes

19    that under current political conditions, in light of CT's reliance on support from the Canadian

20    government, the reputational risk of expanding operations to the United States is simply too high,"

21    that Cartesian Theatre is reluctant to travel to the United States due to political conditions, and the

22    lack of "a stable policy on cross-border business." *Id.*

23    **III.    ARGUMENT**

24    The Court should deny Cartesian Theatre's Second Motion to Dismiss because, as

25    presented, the Contingent Covenant is insufficient to divest the Court of subject matter jurisdiction.

26    Furthermore, the Court should not stay the case pending resolution of the First Motion to Dismiss

---

[1] After the filing of the Second Motion to Dismiss, the parties met and conferred but were unable to reach agreement. (Zweig Decl. at ¶ 6.) The parties continue to meet and confer as of the instant filing.

because Cartesian Theatre has not even attempted to show why the standard for the grant of a stay is met, and because no stay is warranted due at least to the strength of Cohesity's case, the lack of irreparable harm to Cartesian Theatre should a stay be denied, the advanced posture of the proceedings, and the public interest in a speedy resolution of claims.

### A.    Cartesian Theatre Has Not Met Its "Formidable Burden" to Demonstrate Lack of Subject Matter Jurisdiction

Cartesian Theatre argues that the Contingent Covenant will eliminate the case or controversy between the parties and therefore divest the Court of subject matter jurisdiction because its language purportedly tracks that of the covenant not to sue that was held sufficient to eliminate subject matter jurisdiction in *Already v. Nike. See Already*, 568 U.S. at 93.  But given the facts of this case, the Contingent Covenant as presented is not sufficient to eliminate the case or controversy between the parties to this action—and is distinguishable from the covenant in *Already*.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Id.* at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). However, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."  *Id.* (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."  *Id.*  Therefore, under the voluntary cessation doctrine, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)).  "As concerns a covenant not to sue, courts consider, 'in addition to other factors: (1) the language of the covenant, (2) whether the covenant covers future, as well as past, activity and products, and (3) evidence of intention or lack of intention, on the part of the party asserting jurisdiction, to engage in new activity or to develop new potentially infringing products that

arguably are not covered by the covenant,'" and look to "[t]he totality of the circumstances." *Humu, Inc. v. Hulu, LLC*, No. 19-CV-00327-HSG, 2019 WL 3220271, at *1-2 (N.D. Cal. July 17, 2019) (quoting *ChromaDex, Inc. v. Elysium Health, Inc.*, No. SACV 16-02277-CJC(DFMx), 2017 WL 7080237 (C.D. Cal. Nov. 28, 2017)).  Cartesian Theatre has not met its "formidable burden" for all of the reasons set forth below.

### 1.   The Contingent Covenant Does Not Adequately Cover Future Activities and Products

The Contingent Covenant provides that Cartesian Theatre will not make claims based on "Cohesity's <u>use of the term 'HELIOS' in any of its current and/or previous services and products, and any colorable imitations thereof,</u> regardless of whether that service or product is produced or otherwise used in commerce before or after the Effective Date of this Covenant."  ECF No. 65-3 at 6 (emphasis added).  But this does not adequately address Cohesity's future activities and products for at least the following two reasons.

<u>First</u>, unlike in *Already*, Cartesian Theatre has not "taken the position in court that there is no prospect" of future activity by Cohesity that could infringe its alleged rights in its HELIOS trademark and would not be covered by the Contingent Covenant.  *See Already*, 568 U.S. at 94 ("Nike, having taken the position in court that there is no prospect of such a shoe, would be hard pressed to assert the contrary down the road.").  Indeed, during the parties' meet and confer, counsel for Cartesian Theatre agreed that there could be future infringing activities if, for example, Cartesian Theatre found Cohesity to be operating in the music space.  (Zweig Decl. at ¶ 6.)  Cartesian Theatre's discovery requests indicate that this could even include use of Cohesity's platform by any customers that operate in the music space.  (*Id.*, Ex. 3 at 6 (Cartesian Theatre's Request for Admission No. 20: "Admit that CT's Helios product and/or service that CT provides as "Helios" is used for backing up data, including without limitation music data.").)

The court in *Element Capital Management, LLC v. Element Finance, Inc.*, 2024 WL 2786055 (N.D. Tex. Mar. 12, 2024) addressed a similar situation.  There, the plaintiff offered a covenant not to sue under which, similarly to Cartesian Theatre's proposed Contingent Covenant, the plaintiff would refrain from making claims "regardless of whether said claim accrues before,

on, or after the Effective Date and so long as said claim arises from any of Element Finance's past

or current uses of Element's Federally Registered Mark or any mark confusingly similar to

Element's Federally Registered Mark." *Id.* at *3.  The court held as follows:

> Even assuming that the covenant is broad enough to moot Defendant's counterclaim, Plaintiff falls short of its "formidable burden" to make it "absolutely clear" that unlawful conduct **not** protected by the conduct [sic] will not recur. Even if the Court were to agree that Plaintiff's covenant is as broad as Nike's in *Already, LLC*, there, the Court observed that Nike in part bolstered the validity of its covenant not to sue a competing shoe designer because it "[took] the position in court that there is no prospect of such a shoe" that its competitor could produce which did not fall outside the covenant's protection. *Already, LLC*, 568 U.S., at 93–94.
>
> Here, Plaintiff admits that the covenant releases claims for future conduct "so long as that future conduct is limited to Defendant's current and past uses of the ELEMENT mark." (Doc. 37, at 9.) Plaintiff then opines that "[f]uture unknown conduct is speculative and does not create a justiciable controversy." (*Id.*) But Plaintiff must additionally show the Court: (1) it is **absolutely clear** that the unlawful conduct could not reasonably be expected to recur; or (2) that Plaintiff cannot reasonably be expected to resume its enforcement efforts. *Already, LLC*, 598 U.S., at 91; *Nursery Decals*, 2023 WL 4884803, at *6. Plaintiff, unlike Nike, does not clearly take the position that "no such [conduct]" **could** occur that falls outside the covenant's protection.

*Id.* at *4 (emphasis in original).  As in *Element Capital Management*, Cartesian Theatre does not

clearly take the position that no conduct could occur that falls outside the covenant's protection.

And in fact, as explained above, it has taken positions to the contrary.

      <u>Second</u>, in *Already*, the product at issue was a shoe.  568 U.S. at 93.  In the case of a shoe,

there can be a relatively clear demarcation between "current and/or previous footwear product

designs, and *any* colorable imitations thereof" on the one hand, and shoes not covered by the

covenant not to sue on the other.  *Id.* (emphasis in the original).  As the Court observed regarding

non-covered shoes, "[i]f such a shoe exists, the parties have not pointed to it, there is no evidence

that Already has dreamt of it, and we cannot conceive of it.  It sits, as far as we can tell, on a shelf

between Dorothy's ruby slippers and Perseus's winged sandals." *Id.* at 94.  Cohesity's platform,

however, is a software solution.  Unlike shoes, software development is highly iterative, and

software is not a physical product.  It is therefore difficult to demarcate where "use of the term

'HELIOS' in any of its current and/or previous services and products, and any colorable imitations

thereof" ends and non-covered use begins.  *See* ECF No. 65-3 at 6.  Accordingly, under the

circumstances of this case, Cartesian Theatre's proposed Conditional Covenant as presented does not adequately address Cohesity's future activities and products.[2]

## 2. The Contingent Covenant Is Also Insufficient to Moot the Case or Controversy Because it Does Not Bind All Relevant Entities

Although it attempts to track the *Nike* covenant, the language of the Contingent Covenant is inadequate as presented because it does not bind all relevant entities.  In *In re Interstate Bakeries Corp.*, the court considered whether a party's waiver of rights to assert a license agreement mooted the case or controversy between the parties.  751 F.3d 955, 960–61 (8th Cir. 2014).  The court found that it did not, holding that the party had not met its "formidable burden" to show "that it is 'absolutely clear' that the allegedly unlawful activity cannot reasonably be expected to recur," *id.* at 961 (quoting *Already*, 568 U.S. at 91), as follows:

> Especially in light of the lengthy and ongoing dispute between the parties over the status of the License Agreement, the record does not foreclose a reasonable possibility that IBC or its successors or assigns who own the marks will maintain that the agreement is executory.  IBC's purported waiver is not comparable to the agreement in *Already*, which bound not only the complainant but also its parents, subsidiaries, licensees, assigns, other related business entities, as well as any of their predecessors or successors in interest.

*Id.* (citing *Already, LLC v. Nike, Inc.*, 2012 WL 3602217, J.A. at \*96a–97a).

As referenced by the court in *In re Interstate Bakeries*, the version of Nike's covenant not to sue presented in the Supreme Court's *Already v. Nike* opinion (upon which Cartesian Theatre modeled the Conditional Covenant) is truncated, as follows:

> "[Nike] unconditionally and irrevocably covenants to refrain from making *any* claim(s) or demand(s) ... against Already or *any* of its ... related business entities ... [including] distributors ... and employees of such entities and *all* customers ... on account of any *possible* cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law ... relating to the NIKE Mark based on the appearance of *any* of Already's current and/or previous footwear product designs, and *any* colorable imitations thereof, regardless of whether that footwear is produced ... or otherwise used in commerce before or after the Effective Date of this Covenant." App. 96a–

---

[2] The court in *Element Capital Management* further held that "[w]hile the Court would also determine that Defendant fails to satisfy its burden to show a concrete plan or intention to engage in conduct falling outside the covenant, *Already*, LLC, 568 U.S., at 94, because Plaintiff first shoulders the burden to show that the conduct cannot be reasonably expected to recur—and has failed to do so—the Court need not analyze Defendant's argument."  *Element Cap. Mgmt.*, 2024 WL 2786055, at \*4.  Cohesity respectfully submits that the Court here similarly need not reach Cohesity's plans and intentions.

97a ….

*Already*, 568 U.S. at 31.  The full version of Nike's covenant is as follows:

> NIKE for and on behalf of itself, its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities, hereby unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against Already or any of its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities and all customers of each of the foregoing (whether direct or indirect), on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law in the United States relating to the NIKE Mark based on the appearance of any of Already's current and/or previous footwear product designs, and any colorable imitations thereof, regardless of whether that footwear is produced, distributed, offered for sale, advertised, sold, or otherwise used in commerce before or after the Effective Date of this Covenant.

*Already, LLC v. Nike, Inc.*, 2012 WL 3602217, J.A. at *96a–97a.

Like the waiver in *In re Interstate Bakeries*, the Contingent Covenant does not bind CT's related business entities, or CT's—or Cohesity's—parents, subsidiaries, licensees, assigns, or other predecessors or successors in interest.  *See* ECF No. 65-3 at 6.  Thus, it is not "absolutely clear" that the enforcement efforts against Cohesity "cannot reasonably be expected to recur."  *See Already*, 568 U.S. at 91.

### 3.  Cartesian Theatre's Present and Past Conduct Further Demonstrate That It Is Not "Absolutely Clear the Allegedly Wrongful Behavior Could Not Reasonably Be Expected to Recur"

Under the voluntary cessation doctrine, "other factors" may be relevant to the question of whether a defendant has met its "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Humu*, at *2 (citation omitted).  Here, Cartesian Theatre's past enforcement activities, its present assertions regarding the purpose and intent behind its proposed Conditional Covenant, and the conditionality of the proposed Conditional Covenant, further demonstrate that it is not "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *See Already*, 568 U.S. at 91 (citation omitted).

First, Cartesian Theatre indicates it will continue to enforce its rights in its Canadian HELIOS trademark, irrespective of any covenant not to sue in the United States. *See, e.g.*, ECF No. 37-1 at 30 (requesting a stay pending resolution of the Canadian Proceeding); ECF No, 65-3 at 5 ("CT is currently focused on the Canadian market"). If taken at their word, as asserted in its First Motion to Dismiss Cartesian Theatre's campaign to enforce its HELIOS mark was only ever directed at the Canadian market and only ever intended to enforce its Canadian HELIOS mark. *See, e.g.*, ECF No. 37-1 at 10 ("Ultimately, this case boils down to a dispute over whether a Canadian trademark is valid and infringed and whether efforts to prevent US-based technology companies, directly or via inducement to infringe, by taking actions directed at Canada, are permissible based on whether the Canadian actions infringe the Canadian trademark. CT sent numerous communications to US companies, but all of them identified the Canadian registered trademark as the sole trademark at issue.").

However, as detailed in Cohesity's opposition to the First Motion to Dismiss, Cartesian Theatre's purportedly Canada-focused enforcement was directed to U.S. companies and negatively impacted Cohesity's U.S. trademark rights. *See, e.g.*, ECF No. 48 ("CT followed its threats with action, including issuing 'notices of infringement' and contacting Cohesity's major U.S. business partners and service providers, demanding they stop carrying or supporting Cohesity's HELIOS products and services based on alleged infringement. ECF No. 1, ¶¶ 2, 15, 33. CT issued takedown notices to Amazon, Apple, Facebook, the Google Play Store, GitHub, Instagram, X (formerly Twitter), and YouTube, and CT was successful in the takedown of 'several publications of Cohesity's.'"). Given Cartesian Theatre's own position that it previously intended to enforce only its Canadian trademark rights, but in doing so impacted Cohesity's U.S. trademark rights, it is not "absolutely clear" that Cartesian Theatre's continued Canadian enforcement activities will not continue to impact U.S. trademark rights. *See Already*, 568 U.S. at 91 (citation omitted).

Second, in *Already*, Nike took the position in the preamble of its covenant not to sue that "Already's actions ... no longer infringe or dilute the NIKE Mark at a level sufficient to warrant the substantial time and expense of continued litigation." *Already*, 568 U.S. at 89. In contrast, Cartesian Theatre's proposed Conditional Covenant explicitly states that "CT does not admit, nor

should this document be taken or used as evidence, that dilution has taken place or that there is merit to the declaratory relief claims," that "CT is currently focused on the Canadian market and recognizes that under current political conditions, in light of CT's reliance on support from the Canadian government, the reputational risk of expanding operations to the United States is simply too high," and that "[t]his covenant is granted based on the political, personal safety, practical financial and resource concerns raised by litigating in the United States. CT makes no concession that Cohesity's use of the term 'Helios' does not infringe or confuse consumers." ECF No. 65-3 at 5-7. Cartesian Theatre therefore appears to maintain that Cohesity infringes its U.S. trademark. Cartesian Theatre makes no representation that its focus will remain limited to the Canadian market, instead explicitly stating that this is its focus "currently," or that its resources will remain limited. *Id.* at 6. Political conditions in the United States and Canada, of course, are subject to change. Under these circumstances, it cannot be "absolutely clear" that Cartesian Theatre will not resume its enforcement activities. *See Already*, 568 U.S. at 91 (citation omitted).

Third, if Cartesian Theatre wished to moot this dispute by providing a covenant not to sue, it could have done so at any time. Instead, the first time Cartesian Theatre presented a covenant not to sue was with the instant motion, and then only offered a conditional covenant not to sue that is said to be effective only if certain conditions are met. *See* ECF No. 65-3 ("As a condition precedent to this covenant being effective, the motion filed as ECF 37 on July 27, 2025, to dismiss or stay the case must be resolved by the District Court in favor of Cohesity on both the issues of the stay and the dismissal."). Under *Already*, to meet the voluntary cessation test, a covenant not to sue must be "unconditional." 568 U.S. at 93. That Cartesian Theatre only now has provided a covenant, and has made it expressly conditional on certain events, further indicates that it is not "absolutely clear" that Cartesian Theatre will not resume its enforcement activities. *See Already*, 568 U.S. at 91 (citation omitted).

4.      **The Conditional Covenant Does Not Make It "Absolutely Clear the Allegedly Wrongful Behavior Could Not Reasonably Be Expected to Recur" Because Cartesian Theatre Could Argue It Is Voidable Due to Duress**

As discussed in Section III.A.3 above, the Conditional Covenant makes clear that Cartesian Theatre proposes it because it feels compelled to due to the "current political conditions." ECF No. 65-3 at 5. The declaration of Cartesian Theatre's founder, Kipling Warner, is consistent with this, stating that "CT has decided that the current risks – both reputational and physical – of proceeding with defending a U.S. trademark case far outweigh any benefit that may be gained by defending the case. … I need to be able to sleep at night, and part of that is knowing that I'm not going to have to be in the United States at a time when law enforcement poses a risk to my safety. … It is my intent and purpose in providing the Covenant to avoid the risks of travel to the United States and the Canadian reputational risk associated with a push into the United States." *Id.* at 3.

Under California law, "[e]conomic duress is an equitable doctrine which 'come[s] into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'" *Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522, 528 (N.D. Cal. 1995) (citation omitted). To prove economic duress, a party must show that "(i) [opposing party] engaged in a sufficiently coercive wrongful act that; (ii) a reasonably prudent person in [party asserting duress's] economic position would have had no reasonable alternative but to succumb to [opposing party's] coercion; (iii) [opposing party] knew of [party asserting duress's] economic vulnerability; and (iv) [opposing party's] wrongful act actually caused or induced [party asserting duress] to endorse the Release." *Id.* at 529. Furthermore, under California law, the doctrine of third-party duress permits "an innocent party, whose assent was induced by a third party's use of duress, to void that contract under certain circumstances." *Changzhou AMEC E. Tools & Equip. Co. v. E. Tools & Equip., Inc.*, No. EDCV 11-00354 V, 2012 WL 3106620, at *16 (C.D. Cal. July 30, 2012). "For instance, 'a party who enters into a contract under duress may obtain rescission against another contracting party, who, although not responsible for the duress, knows that it has taken place and takes advantage of it by enforcing the contract, particularly a contract made with inadequate consideration.'" *Id.* (citation omitted).

Cohesity does not contend that the conditions for economic or third-party duress would necessarily be met here.  However, given Cartesian Theatre's stated reasons for proposing the Conditional Covenant, Cartesian Theatre could potentially argue that the Conditional Covenant is voidable under these theories.  This uncertainty as to whether the covenant could be voidable further demonstrates that Cartesian Theatre cannot meet its "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *See Already*, 568 U.S. at 91.

### B.    The Court Should Not Stay the Case Pending Rulings on the First Motion to Dismiss and this Motion

"The proponent of a stay bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *see also Perez v. Discover Bank*, No. 20-CV-06896-SI, 2023 WL 1805213, at *3 (N.D. Cal. Feb. 7, 2023) ("A stay is an exercise of discretion rather than a matter of right.  *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020).  'The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.' *Id.*").  Cartesian Theatre seeks a stay of proceedings pending rulings on the First Motion to Dismiss and the Second Motion to Dismiss.[3]  However, Cartesian Theatre does not cite any authority or relevant legal standard under which it seeks a stay or attempt to show why a stay is appropriate under such authority as required by the local rules governing motion practice.  *See* Civil L.R. 7-4(a)(5) (requiring "[a]rgument by the party, citing pertinent authorities.").  Because Cartesian Theatre has not met its burden of establishing the need for a stay, its request should be denied on this basis.

Additionally, Cohesity submits that a stay is not warranted under the circumstances.  "In deciding whether to grant a stay, the Court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Perez*, 2023 WL

---

[3] It appears that Cartesian Theatre seeks a stay of proceedings entirely, not just a stay of discovery.  *See* ECF No. 65-1 ("This litigation should be stayed pending a ruling on the First Motion.").

1805213, at *3 (quoting *Al Otro Lado*, 952 F.3d at 1006-07). "The first two factors ... are the most critical." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Here, these factors do not merit a stay.

First, Cartesian Theatre has made no showing at all that it is likely to succeed on the merits. For the reasons discussed in Section II above, the known facts indicate that there is no likelihood of confusion and therefore Cartesian Theatre is not likely to succeed on the merits. Moreover, as discussed in Section III.A.1-4 above, the Conditional Covenant as presented is insufficient to divest the Court of subject matter jurisdiction. The first factor therefore weighs against a stay. *See Perez*, 2023 WL 1805213, at *3.

Second, Cartesian Theatre has made no showing that it will be irreparably injured absent a stay. Cartesian Theatre argues that "litigation activities prior to such a ruling [on the First Motion to Dismiss] would be a waste of party … resources." ECF No. 65-1 at 4. However, "expenses incurred by litigation are generally 'not considered irreparable harm.'" *Id.* (quoting *Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 1832638, at *2 (N.D. Cal. May 1, 2013)). The second factor therefore also weighs against a stay. *See Perez*, 2023 WL 1805213, at *3.

Third, a stay will cause injury to Cohesity by delaying the proceedings. While a delay is not necessarily, by itself, enough for this factor to weigh against a stay, "this case is in an advanced stage." *See Aylus Networks, Inc. v. Apple Inc.*, No. C-13-4700 EMC, 2015 WL 12976113, at *1 (N.D. Cal. June 2, 2015). Fact discovery is set to close on February 10, 2026 (ECF No. 64), and trial is set for August 10, 2026 (ECF No. 39). As discussed in Section II above, Cohesity has invested significant resources in conducting discovery. *See also* ECF No. 67 at 11-12. "In short, this case is no longer 'in an early stage of proceedings,' and thus a stay is disfavored." *See Aylus Networks*, 2015 WL 12976113, at *1 (quoting *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 WL 121640, at *2 (N.D. Cal. Jan. 13, 2014)). The third factor therefore also weighs against a stay. *See Perez*, 2023 WL 1805213, at *3.

Fourth, "the public interest favors the speedy resolution of claims." *Greco v. Uber Techs., Inc.*, No. 4:20-CV-02698-YGR, 2021 WL 134578, at *3 (N.D. Cal. Jan. 14, 2021). Particularly

given the advanced stage of the proceeding, the fourth factor therefore also weighs against a stay.

*See Perez*, 2023 WL 1805213, at *3.

## IV.    CONCLUSION

For the foregoing reasons, Cohesity respectfully requests that the Court deny Cartesian Theatre's motion to dismiss and for a stay.

Dated: January 29, 2026                    Respectfully submitted,

                                          */s/ Jacob S. Zweig*
                                          Megan Whyman Olesek (State Bar No. 191218)
                                          Megan.Whyman.Olesek@ThompsonHine.com
                                          Jacob S. Zweig (State Bar No. 296129)
                                          Jacob.Zweig@ThompsonHine.com
                                          Thompson Hine LLP
                                          155 Bovet Road, Suite 600
                                          San Mateo, California 94402
                                          Telephone: (650) 521-5930

                                          *Attorneys for Plaintiff*
                                          *Cohesity, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which will send notification of such filing to all parties who have appeared in this matter.

Dated:  January 29, 2026                    */s/ Jacob S. Zweig*
                                            Jacob S. Zweig