GARY SHUSTER, CSB 162379
gary@shuster.com
2301-1228 Marinaside Cr.
Vancouver, British Columbia V6Z 2W4
Canada
Telephone: (604) 417-5002
Facsimile: (559) 272-2222

*Attorney for Defendant Cartesian Theatre Corp.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| COHESITY, INC,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>CARTESIAN THEATRE CORP., and DOES 1 - 25,<br><br>　　　　　　Defendants. | Case No. 4:24-CV-09104-JST<br><br>**DEFENDANT CARTESIAN THEATRE CORP.'S REPLY BRIEF IN SUPPORT OF CONTINGENT MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION TO STAY PROCEEDINGS PENDING A RULING IN THE JULY 27, 2025 MOTION**<br><br>**Judge: Hon. Jon. S. Tigar** |

# I. <u>INTRODUCTION:</u>

It is untoward to accuse an opposing party of litigating for an improper purpose, and Cartesian Theatre Corp. ("CT"), despite holding suspicions, has avoided pushing the issue.[1]

Cohesity's rigid insistence on snatching defeat from the jaws of victory leaves us no choice but to call this what it is: An improper attempt to ramp up CT's costs and fees and thereby compromise its ability to pursue the Canadian litigation, even if it costs Cohesity hundreds of thousands of dollars in unnecessary U.S. legal fees to do so.

CT has been clear about how it is approaching this litigation: There is no case or controversy, and the case should be dismissed pursuant to the Motion to Dismiss or Stay, ECF 37 ("First Motion"). It is preferable to prevail on ECF 37, as rewarding optional, recreational, and potentially improperly motivated litigation with a covenant not to sue would be wrong. Should this Court determine that the declaratory relief suit is proper, however, the Covenant Not to Sue attached to this Motion (the "Covenant") comes into force, eliminating any Article III case or controversy.

Speculation that Cohesity *may*, at some unknown future date and for an as-yet unknown reason, abandon its core business in order to compete directly with CT's products, or that CT *may*, at some unknown future date sue, despite the Covenant, if there is a change in U.S. policy that is well beyond CT's ability to influence, is hardly the scenario the founders had in mind when limiting federal jurisdiction to a "case or controversy".

At an earlier Case Management Conference, the Court expressed surprise that the case had not yet settled. We now know why: Cohesity refuses to cease litigating the U.S. case, despite the Covenant that CT will not sue in the U.S. over anything that Cohesity is currently doing or has done, no matter how far into the past or future such activity extends. A party will settle litigation in exchange for a win every time unless its goal is something other than ongoing litigation for the secondary benefits of litigation itself.

As strong as Cohesity's desire may be to be sued for infringement of rights CT may hold under U.S. law, CT will not take the bait. Given the choice between writing code and writing briefs,

---

[1] This Reply Brief does not intend to imply misconduct by counsel and should not be so interpreted.

between business development and software development, CT chooses to build something useful instead of litigating over a possible future U.S. infringement suit it has no intention of bringing and, should the Court find otherwise, has agreed, in this motion, not to bring. This case should end for all of the reasons expressed in ECF 37 as well as this motion.

DISCLAIMER: As this motion is only relevant if the case survives the ECF 37 motion to dismiss, this reply is written as if ECF 37 was denied as to both a stay and a dismissal. In so doing, no concession is made as to a lack of merit in the ECF 37 motion to dismiss. Indeed, we believe that the First Motion merits dismissal, thereby mooting this motion.

## II. DISCUSSION:

To reach the merits of this motion, CT must lose the argument in the First Motion that there is no case or controversy because only Canadian rights were asserted, and the only U.S. activities taken were to stop activity aimed at Canada that also facilitates infringement in Canada. This calls into question the good faith of Cohesity's argument that the Covenant Not to Sue ("Covenant") is not "unconditional." By the time this motion is reached, it will be because the First Motion was denied, thereby causing the Covenant to come into force without conditions.

Cohesity's next argument is that there is merit to its declaratory judgment suit. CT has obligated itself to a Covenant Not to Sue, meaning that even if CT later receives absolute, incontrovertible proof that Cohesity was infringing and would continue to infringe its mark, CT could do nothing about it. In the Case Management Conference Statement (ECF 67) ("CMC Statement"), CT was as clear as it could be: "CT's intent is to terminate its involvement in this case one way or another, whether by winning ECF 37 or by waiving U.S. rights against Cohesity…" CMC Statement 5:12 – 13.

As to the claimed infirmities in the Covenant, CT has hidden nothing: "Should [this motion] fail due to an infirmity in the contingent Covenant, CT intends to issue an amended Covenant Not to Sue that cures any infirmities." CMC Statement 1:17-19. The issue of the merits of the case raised in the opposition is simply another thing we are now required to expend resources on, despite having unequivocally given Cohesity the win without the need for litigation if the First Motion is denied.

1     Put simply, if this case were brought without jurisdiction (whether subject matter or
2  personal), it ends pursuant to the First Motion. If the Court finds the case was properly brought, CT
3  has already executed a Covenant that resolves all issues other than the fanciful, speculative, and
4  frankly manufactured "controversy" that at some point in the future, Cohesity *could potentially*
5  refocus its efforts on directly competing with CT, the geopolitical and safety issues *might* evaporate,
6  CT *might* still be in business and won't have rebranded, and CT *might* sue over a use of the term
7  "Helios" that Cohesity cannot identify, but can only speculate *might* happen. *Maybe*.
8     A similar point exists as to discovery. Cohesity improperly raises a potential discovery
9  dispute that remains under discussion, asserting that CT has not fully engaged in discovery. Without
10 discussing the merits of a discovery dispute that is still in the meet-and-confer stage, CT notes that
11 Cohesity's "full speed ahead" approach, even in the face of capitulation, can only be understood as
12 an improper attempt to drain CT of the resources it needs to litigate in the market it actually cares
13 about, Canada.
14    As to the alleged failure to substantiate the need for a stay, CT relies on the Court's inherent
15 power to prevent abuse of the litigation process. Continuing to force a party to incur discovery and
16 motion practice costs when that party has taken all steps it reasonably believed necessary to ensure
17 the case terminates on a motion to dismiss (even promising to amend the Covenant should the Court
18 find it deficient) can only be understood as an attempt to compromise CT's financial stability and
19 ability to conduct the Canadian litigation. There is no other reasonable explanation for Cohesity's
20 insistence that CT did not commit to give up its rights to sue Cohesity for any past activities and the
21 continuation of any current activities (in the event that the case is not dismissed pursuant to the First
22 Motion).
23    There should be no purpose to litigation other than to win, yet Cohesity refuses to take the
24 win. Indeed, when CT's counsel asked Cohesity to identify the deficiencies it claimed (in its draft
25 CMC statement) to exist in the Covenant – i.e. any loophole it identified that could let CT sue
26 Cohesity for matters raised in the complaint, Cohesity passed on the opportunity. Remarkably,
27 merely days later, Cohesity filed a lengthy brief detailing alleged defects in the Supreme Court's
28

3
REPLY BRIEF IN SUPPORT OF CONTINGENT MOTION TO DISMISS AND MOTION FOR STAY.
NO. 4:24-CV-09104-JST

approved language as reflected in the Covenant. Reply Declaration of Gary Shuster in Support of Contingent Motion to Dismiss ("Shuster Decl.") ¶ 2.[2]

Under Cohesity's theory, *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013) was wrongly decided a decade ago, and must give way to speculation, splitting hairs and the musings of unreported opinions. CT literally took the language that the Supreme Court blessed in *Already*, expanded it, and then asserted that it would further expand the Covenant's scope if the Court found it deficient. When the Supreme Court puts language in a block quote and approves of it, litigants are entitled to act as if that language does what the Supreme Court says it does.

The "formidable burden" that Cohesity says has not been met despite CT's every effort to ensure it loses the litigation if it loses the First Motion must truly be impossible to meet. It went unsaid in *Already*, as it should have been obvious, that if, post-covenant, Already started to call its shoes "Nike", Nike's covenant not to sue would not extend to that future infringement not contemplated at the time the case was dismissed pursuant to the covenant not to sue. The panoply of speculation by Cohesity is no different than if Already had argued that it should be allowed to continue to litigate because at some future, unplanned point, it might decide to adopt the term Nike, thereby creating a case or controversy out of guesswork and fantasy. Cohesity takes this position: *Maybe* it will want to directly compete with CT, releasing an AI music analysis and matching product. *Maybe* it will do so under the mark Helios. *Maybe* CT's interest in the US market will reemerge. Fortunately, the Case or Controversy requirement means that courts are not obligated (or able) to resolve disputes that could, potentially, at some unknown future point, because of some unknown and unanticipated future events, arise.

---

[2] Two declarations are submitted in conjunction with this Reply brief. The Declaration of Kipling Warner is submitted to correct a misstatement of the record made in the Opposition on an issue not raised in the Motion (¶¶ 2, 3) and to introduce information not available at the time the Motion was filed (¶¶ 4). The Declaration of Gary Shuster is submitted to introduce information not available at the time the Motion was filed (¶¶ 2, 3). Each declaration was written in full by the declarant.

1    To moot Cohesity's "if I can dream it I can sue for a declaratory judgment over it" exception to *Already*, just as Nike represented to the Court, CT represents now: In the event that the Covenant comes into force, CT will not send any communications to any US-affiliated third party claiming any infringement other than of the Canadian mark, and even then, will clearly state, in any such correspondence, in all capital letters, "CARTESIAN THEATRE IS REFERENCING ONLY CANADIAN TRADEMARK RIGHTS. NO CLAIM AS TO U.S. TRADEMARK RIGHTS IS MADE." Should CT expand to another non-U.S. market and determine it has trademark rights in that non-U.S. market,, it will make the same statement in any correspondence , substituting the name of the non-U.S. country for Canada. With that representation, the concerns raised in the unreported case Cohesity cites as overruling the Supreme Court's *Already* decision, *Element Capital Management, LLC v. Element Finance, Inc.*, 2024 WL 2786055 (N.D. Tex. Mar. 12, 2024), are satisfied.

   CT believes the Covenant is clear. Whether the product or service is software, hardware, shoes, or aircraft, if Cohesity uses Helios in conjunction with a product or service that is colourably the same as a current product or service, CT cannot sue for infringement in the United States. Cohesity had no difficulty demarcating its goods and services from CT's in the complaint and in all of the motion practice and discussions to date. Its sudden inability to identify what is and is not similar to its current uses apparently arises somewhere between page 2 and page 6 of their Opposition. On pages 1 and 2, they are quite clear about their ability to do so: There are "stark differences between" the offerings of CT and Cohesity (1:24-25); the products travel in "different marketing channels" (2:2-3); consumers can tell the difference (1:24); and those who are tech-savvy can easily discern the difference (2:1-2). By page 6, they claim that *Cohesity itself* could be confused as to which product "Helios" refers to (6:26-28).

   If Cohesity is truly confused about the reach of the Covenant, it would have suggested alternative language, either during conversations with counsel or in the Opposition. They chose not to. CT offered to modify the language to meet any concerns Cohesity had, yet Cohesity chose instead to litigate the validity of what it claims to be an ineffective Covenant. Shuster Decl. ¶ 2. This is a

1   key point, because the Covenant is CT's attempt to foreclose future litigation against Cohesity.
2   Rather than work to obtain a win via Covenant that satisfies its alleged purpose for filing this case,
3   Cohesity chose to force the litigation to continue. There is no rational explanation for this behavior
4   that is consistent with good faith litigation.

5   That said, CT is willing to modify the Covenant as follows: Replace all existing language
6   with the following: "CT covenants not to sue Cohesity for any claim for which an active case or
7   controversy, sufficient for Article III jurisdiction, existed as part of the litigation, as of the date of
8   this Covenant. The same parties that would be bound by a ruling in the litigation are covered by this
9   Covenant." CT would rather not replace a precise and easily understood covenant, tracking language
10  approved by the Supreme Court, with one that invites future litigation over what would have
11  comprised an Article III case or controversy in litigation that will have long been over by the time it
12  became an issue. Such a covenant would, of course, necessarily be no more than coextensive with
13  the Covenant, but could be interpreted, perhaps decades from now, as being quite a bit narrower than
14  the Covenant's language. CT would prefer the certainty of the *Already* language to the guesswork
15  that the alternative language provides, but to end this case it is willing to switch to the language
16  above.

17  Cohesity's next strawman is the illusory concern that CT's corporate parents, subsidiaries,
18  successor or assigns might ignore the Covenant. This concern is a manufactured one. They are well
19  aware that CT is a small company without parents or subsidiaries. It simply did not occur to counsel
20  for CT that it was expected to behave as if it were a Fortune 50 company and include entities of all
21  sorts that do not actually exist within the Covenant. Regardless, as CT has already stated in its CMC
22  statement, it will modify the Covenant to address any deficiencies the Court identifies. It is the intent
23  of CT in writing the Covenant to bind any and all entities, and only those entities, that could be
24  bound by a judgment in this litigation.

25  Cohesity's parade of reasons why CT should counterclaim for infringement rather than give
26  Cohesity the win if it loses the First Motion next claims concern that CT may enforce Canadian
27  rights by asking U.S. companies to stop contributorily infringing within Canada. However, the

28

1  Complaint does not seek a declaration that CT has no Canadian rights (nor could it) and does not
2  assert that asking U.S. companies not to violate Canadian law is wrongful. To hold otherwise would
3  turn the U.S. into an outlaw nation, where actions violative of foreign law could regularly be
4  taken by U.S. companies with no fear of consequences because merely asking a U.S. entity to stop
5  violating Canadian law would be actionable. This Court should decline Cohesity's invitation
6  to kill any incentives non-U.S. companies have to do business with U.S. companies.
7        Cohesity's next claim has no legal relevance, but is telling. Cohesity claims that CT could
8  have mooted the case at any time by offering the Covenant earlier in the process. However, Cohesity
9  does not explain how the Covenant would have done so in the face of their conflicting claims that
10 no Covenant would be sufficient so long as CT holds Canadian rights that it might ask U.S.
11 companies aiming activities at Canada to respect. They are also wrong on a crucial point: At a time
12 when CT was unable to locate U.S. counsel, shortly after being served with this case, CT in fact did
13 offer a covenant not to sue. On January 17, 2025, CT wrote to Michael Hendershot of Jones Day
14 (Counsel for Cohesity) and stated, "Cohesity's pleading appears to be predicated on CT having
15 asserted trademark rights within the United States … or that CT has threatened your client's right to
16 use its mark in the United States. CT is not aware of ever having taken any steps to do so." Reply
17 Declaration of Kipling Warner in Support of Contingent Motion to Dismiss ('Warner Decl."), ¶ 2,
18 Exh. A.
19       The letter goes on to offer "to negotiate terms of settlement … that provide your client with
20 the comfort of a negative covenant that CT does not assert any trademark rights against Cohesity in
21 the United States." No payment was discussed in the letter. CT simply wished to enforce its Canadian
22 rights and had no interest in monetizing U.S. rights. Warner Decl. ¶ 2, Exh. A. Cohesity
23 acknowledged receipt of that offer, but did not accept it, Warner Decl.¶ 3, Exh. B. As is clear from
24 the Covenant in this motion, CT was and is willing to issue a covenant without demanding payment.
25       The final deficiency contrived in the Opposition is that CT could argue that the Covenant is
26 voidable due to duress. However, the duress they point to is not caused by Cohesity, but by the
27 United States. As a matter of public policy, CT cannot claim that duress imposed by the federal
28

government gives it a free pass to violate commitments to private parties. Furthermore, there is always some level of duress in litigation. To hold that a risk of duress means that a covenant not to sue can never be enforced would prevent a declaratory relief defendant from settling any case, whether by issuance of a covenant not to sue or by agreeing to settle.

Cohesity's position turns the world on its head. Despite CT wanting the litigation to end, being willing to give up substantive rights to make it end, needing it to end so that product development can resume in full, and doing all it can to make it end, Cohesity takes the position that CT is prohibited from ending the litigation with a covenant not to sue by the risk that it will later claim duress. It does CT no good to win this case and go bankrupt because it had to stop or drastically reduce product development to win.

Regardless, CT will stipulate to an order that it may not claim it is not bound by the Covenant due to duress. It surely cannot be the case that litigation must proceed to a verdict every time, with no ability to settle, any time the litigation imposes a burden on a party.

Finally, Cohesity argues that no stay should issue, and CT should be required to incur additional litigation costs, including discovery, even as CT is doing what it can to exit the case and shift from document production to product production. Federal Courts have workloads that far exceed what is compatible with quick rulings. Cohesity seeks to weaponize that workload and delay by forcing CT to spend money and resources on discovery for a case that CT has done as much as possible to end, including giving up the same substantive rights that the discovery would seek to evaluate.

CT's founder, Kipling Warner, should have been preparing to be part of a Canadian trade delegation to Doha, Qatar for a conference starting on the date of the Case Management Conference. Instead, he was in Vancouver working with counsel on this Reply Brief. Warner Decl. ¶ 4. Enough is enough. The opportunity costs alone of this litigation are unacceptable. CT is crying "uncle" and Cohesity is ignoring that in favor of continued bullying.

### III. CONCLUSION:

The Court should never reach the merits of this motion, as the First Motion should be granted.

However, if it reaches the merits, CT respectfully asks that the Court reject Cohesity's bizarre attempt to remain subject to suit and instead accept the Covenant language as approved by the Supreme Court, thereby giving Cohesity the win it seems not to want. While the Canadian courts may choose to address whether refusing to take a win means that Cohesity was acting in bad faith to compromise CT's position in the Canadian litigation, this Court need not make any such determination. Instead, the Court should simply accept that a promise not to sue is a promise not to sue and give Cohesity the win.

Missing participation in a national trade delegation to Qatar harmed CT. Missing the next dozen such opportunities because Cohesity won't take "you win" for an answer would be a miscarriage of justice.

DATED: January 30, 2026                    GARY SHUSTER

By: /s/ Gary S. Shuster

    2301-1228 Marinaside Crescent
    Vancouver BC V6Z 2W4
    Canada
    Attorney for Cartesian Theatre Corp.