1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6

7    COHESITY, INC.,                    Case No. 24-cv-09104-JST

8                    Plaintiff,

9         v.                           **ORDER DENYING MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR A MORE DEFINITE STATEMENT, FOR A STAY, OR TO STRIKE**

10   CARTESIAN THEATRE CORP.,

11                   Defendant.         Re: ECF No. 37

12

13        Before the Court is Defendant Cartesian Theatre's motion to dismiss, or in the alternative

14   for a more definite statement, for a stay, or to strike.  ECF No. 37.  The Court will deny the

15   motion.

16   **I.    BACKGROUND[1]**

17        This is a Declaratory Judgment Act suit filed by Plaintiff Cohesity, Inc. ("Cohesity")

18   against Defendant Cartesian Theatre Corp. ("CT") seeking a declaration that Cohesity's use of its

19   trademark "HELIOS" for software products and services does not infringe on CT's HELIOS

20   trademark.  ECF No. 1 ¶ 1.

21        Cohesity is a provider of artificial intelligence-powered data security and data management

22   software solutions.  *Id.* ¶¶ 6, 19.  "Cohesity helps defend against cybersecurity threats with

23   comprehensive data security and management capabilities, including immutable backup snapshots,

24   artificial intelligence-based threat detection, malicious behavior monitoring, and rapid recovery at

25   scale."  *Id.* ¶ 19.

26

27

28   [1]  For purposes of resolving the present motion, the Court accepts as true the factual allegations in the complaint, ECF No. 1, except as contradicted by evidence properly before the Court.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

Since August 21, 2018, Cohesity has offered a product called Helios, "a software-based management solution that enables Cohesity customers to view and manage their data and applications that use a Cohesity solution from a single dashboard." *Id.* ¶ 23. "Helios consolidates secondary data and applications, such as backup, test/development, archives, and analytics all in a single unified user interface." *Id.* "The Helios platform allows businesses using a Cohesity solution to view, manage, and secure their global data and software applications, no matter where they may be located across a business's many and various computer networks." *Id.* Cohesity applied to register the HELIOS trademark with the USPTO on July 2, 2020, and the trademark registered on July 4, 2024. *Id.* ¶ 25.

10

11

12

13

14

15

16

Defendant CT is a Canadian corporation based in Vancouver that has its own 'HELIOS' product, which is a music recommendation engine that allows customers to search large commercial music libraries by using music itself as the search key. *Id.* ¶¶ 7–8, 28. CT first applied for the HELIOS mark in Canada on or about February 26, 2020. ECF No. 37-3 ¶ 15. It was approved for publication on June 21, 2024; published for opposition on July 17, 2025; a two-month opposition period closed on September 17, 2025; and the registration formally issued on October 4, 2025." *Id.*

17

18

19

20

21

22

23

24

25

26

27

28

On August 12, 2024, in the middle of the opposition period, CT's principal and founder Kipling Warner contacted Cohesity. ECF No. 1 ¶ 29. The parties' descriptions of this contact differ significantly. The complaint alleges that "Mr. Warner admitted that Defendant and Cohesity did not have identical products, but nonetheless, alleged that Cohesity infringed on Defendant's trademark." *Id.* It continues, "[a]s a remedy to the alleged infringement, Mr. Warner demanded that Cohesity license the HELIOS trademark or suffer 'catastrophic' consequences." *Id.* CT has submitted Warner's August 12 email to Cohesity's outside counsel. ECF No. 37-3 at 35. In the email, Warner notes that Cohesity has applied for Canadian protection for its HELIOS trademark, and that such protection may be refused because of CT's pending trademark registration. *Id.* Warner offers to license CT's trademark "for Canadian domestic usage." *Id.* He does not use the word "catastrophic." He states that Cohesity "may be wise to court a large and growing Canadian market." Warner also, however, states that "CT is seeking international

1    protection for its technology because there is an international opportunity to commercialize it not

2    limited by geographic borders" and "[t]he global commercial music industry was $20B USD a

3    year in 2019 and growing annually." *Id.*

4        On August 29, 2024—less than two weeks after contacting Cohesity—CT filed a use-

5    based trademark application for the HELIOS trademark in the United States "covering

6    '[d]ownloadable computer software and databases for use in analyzing music' in Class 009 and

7    '[s]oftware as a service (SaaS) services featuring computer software for music analysis and

8    management; advisory services in the field of music software development'" in Class 042." ECF

9    No. 1 ¶ 31.

10       On September 10, 2024, Warner again contacted Cohesity's outside counsel. ECF No. 37-

11   3 at 58. He stated that if the parties were unable to resolve their dispute, "CT has to begin issuing

12   the currently embargoed notices of infringement. These notices may demand certain remedies and

13   assurances from the stakeholders." *Id.* He noted that CT would be obligated to issue such notices

14   to avoid the risk of losing its mark for failure to police, which "would cause catastrophic and

15   irreparable harm to CT." *Id.* He continued:

16           The burden of issuing the notices themselves to the stakeholders
17           could be significant, putting aside the consequences of doing so.
             Just one of the many identified domestic Cohesity resellers has at
             least 81 other subcontractors under its auspices with commercial
18           offerings related to Cohesity's Helios. AWS Canada, Insight, and
             many others are also engaged in similar activity. That does not even
19           begin to canvass all of the end-user customers of the
             aforementioned. [¶] The fallout would inevitably not be contained
20           domestically. Cohesity has statutory obligations to notify the SEC
             with respect to any omitted material representations in their Form S-
21           1 registration statement or its draft. The company proposing to sell
             securities in its current predicament would be problematic, to say the
22           least.

23   *Id.* at 58-59.

24       CT then began releasing notices of infringement to third parties. *Id.* ¶ 29. CT asserts that

25   its notices were "carefully crafted to address only infringement in Canada" and not the United

26   States. *Id.* ¶ 57. At least one such notice, however, requested that Amazon Web Services "kindly

27   confirm that the Unauthorized Usage has been removed from *all* websites, platforms, and social

28   media accounts under your possession or control[.]" ECF No. 37-3 at 65. At least some these

1    third parties interpreted CT's request as pertaining to content in the United States.  *See* ECF No.

2    48-2 at 7; *id.* at 100.

3        The United States Patent and Trademark Office issued CT's Helios mark on September 16,

4    2025.  ECF No 61-2 at 2.

5        On October 7, 2024, CT filed a complaint in the Canadian Federal Court, *Cartesian*

6    *Theatre Corp. v Cohesity, Inc.*, Court No. T-2636-24, regarding "resolving use and registration

7    issues in Canada under Canadian law."  ECF No. 37-1 at 6.  Cohesity was served with the lawsuit

8    on October 9, 2024.  ECF No. 1 ¶ 34.  The Canadian suit involves a similar dispute regarding

9    Defendant's alleged rights to the HELIOS trademark in Canada.  *Id.*  CT has offered to be bound

10   in the United States by the results of a loss in Canada in exchange for staying the present case.

11   ECF No. 32 at 7:2-5.

12       On December 17, 2024, Cohesity filed this lawsuit seeking a declaration that Cohesity's

13   use of its trademark for HELIOS software products and services "does not infringe Defendant's

14   alleged trademark for HELIOS."  ECF No. 1 ¶ 1.

15       On February 13, 2025, CT's counsel wrote to Cohesity's counsel, offering to provide a

16   covenant not to sue for Cohesity's past use of the HELIOS trademark in the United States in

17   exchange for the payment by Cohesity of specified monetary compensation and dismissal of the

18   present lawsuit.  ECF No. 47-2.  The email made clear that it did not apply "to any claims arising

19   under non-U.S. laws or to proceedings brought outside the United States."  *Id.*

20   **II.    PROCEDURAL BACKGROUND**

21       Cohesity filed its complaint on December 17, 2025.  ECF No. 1.  Defendant CT filed a

22   motion to stay the case *pro se*, which the Court struck because CT was not represented by counsel.

23   ECF Nos. 19, 26.  On July 27, 2025, having obtained counsel, CT filed a motion to dismiss, strike,

24   stay or for a more definite statement.  ECF No. 37.  The parties then stipulated to conduct

25   jurisdictional discovery.  ECF No. 40.  Cohesity then opposed the motion, ECF No. 48, and CT

26   replied, ECF No. 53.  The Court took the matter under submission without a hearing.  ECF No. 58.

27

28

United States District Court
Northern District of California

1  III.    **LEGAL STANDARD**

2      A.      **Rule 12(b)(1)**

3          A plaintiff has standing to sue in federal court only if she has (1) suffered an injury in fact,

4  (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

5  redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "A

6  suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article

7  III federal court therefore lacks subject matter jurisdiction over the suit."  *Cetacean Cmty. v. Bush*,

8  386 F.3d 1169, 1174 (9th Cir. 2004).  "In that event, the suit should be dismissed under Rule

9  12(b)(1) [of the Federal Rules of Civil Procedure]."  *Id.*  "A Rule 12(b)(1) jurisdictional attack

10  may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a

11  complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual

12  attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise

13  invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)

14  (citation omitted).  Where there is a factual attack on subject matter jurisdiction, the court "may

15  review evidence beyond the complaint."  *Id.*   In a factual challenge on subject matter jurisdiction,

16  courts will "resolve all disputes of fact in favor of the non-movant."  *Dreier v. United States*, 106

17  F.3d 844, 847 (9th Cir. 1996), *as amended* (Feb. 4, 1997).

18      B.      **Rule 12(b)(2)**

19          When a defendant objects to the Court's personal jurisdiction over it pursuant to Federal

20  Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is

21  proper."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Absent an evidentiary

22  hearing, however, the plaintiff need only make a prima facie showing of personal

23  jurisdiction.  *Id.*  "Uncontroverted allegations in the plaintiff's complaint must be taken as true",

24  and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the

25  plaintiff's favor."  *Id.*  (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th

26  Cir. 2004)).  "Where, as here, there is no applicable federal statute governing personal jurisdiction,

27  the district court applies the law of the state in which the district court sits."  *Schwarzenegger*, 374

28  F.3d at 800.  "Because California's long-arm jurisdictional statute is coextensive with federal due

United States District Court
Northern District of California

1    process requirements, the jurisdictional analyses under state law and federal due process are the

2    same." *Id*. at 800–01.

3    **C.    Rule 12(b)(3)**

4         Under Federal Rule of Civil Procedure 12(b)(3), a party may file a motion to dismiss on

5    the basis of improper venue.  *Royal Hawaiian Orchards, L.P. v. Olson*, 2015 WL 3948821, at *1

6    (C.D. Cal. June 26, 2015) (citing Fed. R. Civ. P. 12(b)(3)).  "Once venue is challenged, the

7    plaintiff bears the burden of showing that venue is proper."  *Underberg v. Emp'rs Mut. Cas. Co.*,

8    2016 WL 1466506, at *3 (D. Mont. Apr. 14, 2016) (citing *Piedmont Label Co. v. Sun Garden*

9    *Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).  In considering a Rule 12(b)(3) motion to

10   dismiss, the court need not accept the pleadings as true and may consider facts outside the

11   pleadings.  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).  "If the court finds that the

12   case has been filed 'in the wrong division or district,' it must 'dismiss, or if it be in the interest of

13   justice, transfer such case to any district or division in which it could have been brought.'"  *Allstar*

14   *Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009)

15   (quoting 28 U.S.C. § 1406(a)).  "Even if the court determines that venue is proper, it may still

16   transfer for the convenience of parties and witnesses, in the interest of justice."  *Del Toro v. Atlas*

17   *Logistics*, 2013 WL 796593, at *2 (E.D. Cal. Mar. 4, 2013).  "In either case, the decision to

18   transfer rests in the discretion of the court."  *Id*. (citing 28 U.S.C. 1404(b); *King v. Russell*, 963

19   F.2d 1301, 1304 (9th Cir. 1992) (holding that the trial court did not abuse its discretion under 28

20   U.S.C. § 1406(a) when it chose to dismiss, and not transfer, the action for improper venue)).

21   **D.    Rule 12(b)(6)**

22        A complaint must contain "a short and plain statement of the claim showing that the

23   pleader is entitled to relief," Federal Rule of Civil Procedure 8(a)(2), in order to "give the

24   defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*

25   *v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  "To survive a motion to dismiss, a

26   complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

27   plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation

28   marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that

United States District Court
Northern District of California

6

1    allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2    alleged." *Id.* "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

3    cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

4    *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).  The Court

5    must "accept all factual allegations in the complaint as true and construe the pleadings in the light

6    most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

7    ### E.    Rule 12(e)

8        Federal Rule of Civil Procedure 12(e) states that "[a] party may move for a more definite

9    statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably

10   prepare a response." A defendant may move for a more definite statement under Rule 12(e) where

11   "a pleading fails to specify the allegations in a manner that provides sufficient notice."

12   *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). The Court "may in [its] discretion, in

13   response to a motion for more definite statement under Federal Rule of Civil Procedure 12(e),

14   require such detail as may be appropriate in the particular case, and may dismiss the complaint if

15   [the] order is violated." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Rule 12(e)

16   motions "are viewed with disfavor, and are rarely granted." *Margarita Cellars v. Pac. Coast*

17   *Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999).

18   ## IV.    DISCUSSION

19       CT moves to dismiss the action under Rules 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6), or,

20   in the alternative, to strike the complaint under Rule 12(e).  ECF No. 37.  CT also asks that the

21   Court stay the case.  *Id.*  The Court addresses these arguments in turn.

22   ### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

23       CT argues that the Court lacks subject matter jurisdiction because there is no case or

24   controversy before the Court, given that the dispute between the parties is limited to CT's

25   enforcement of its trademark in Canada and that CT has not alleged infringement in the United

26   States.  ECF No. 37-1 at 14, 15.[2]  Cartesian responds that it has a real and reasonable apprehension

27

28   ---
     [2] CT originally based its arguments in part on the fact that "CT currently has no U.S. registered
     mark," *id.* at 17, but that is no longer true.

United States District Court
Northern District of California

1    that it will be subject to a trademark infringement suit for the United States use of its trademark

2    because CT's threats were not limited to the Canadian market.  ECF No. 48 at 12–13.  The Court

3    agrees with Cohesity.

4        The Declaratory Judgement Act permits courts "declare the rights and other legal relations

5    of any interested party seeking such declaration" "[i]n a case of actual controversy within its

6    jurisdiction."  28. U.S.C. §2201(a). "[A] two-part test is used to determine whether a declaratory

7    judgment is appropriate. First, the court must determine if there exists an actual case or

8    controversy within the court's jurisdiction.  Second, if so, the court must decide whether to

9    exercise its jurisdiction."  *Neilmed Prod.* At 1179-80 (N.D. Cal. 2007) (citing *Principal Life Ins.*

10   *Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir.2004).

11       In determining "whether a controversy exists in a declaratory judgement action regarding

12   trademark infringement," the Ninth Circuit uses the "reasonable apprehension test," where "a

13   plaintiff has standing to seek declaratory relief of non-infringement if he demonstrates 'a real and

14   reasonable apprehension that he will be subject to liability' if he continues with his course of

15   conduct."  *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012,

16   1023 (9th Cir. 2023), *cert denied* 144 S. Ct. 190 (2023) (citation omitted).  "In determining if the

17   threat perceived by the plaintiff is real and reasonable, the court focuses upon the position and

18   perceptions of the plaintiff and the acts of the defendant are examined in view of their likely

19   impact on competition and the risks imposed upon the plaintiff.  If the plaintiff is engaged in the

20   ongoing use of the allegedly infringing trademark, the showing of apprehension need not be

21   substantial."  *Neilmed Prods., Inc. v. Med-Sys., Inc.,* 472 F. Supp. 2d 1178, 1180 (N.D. Cal. 2007)

22   (citation modified).  Further, when the dispute concerns a trademark that is used by the parties in

23   more than one country, "the Court must determine whether the parties' relationship and actions

24   create a reasonable apprehension that [Plaintiff] will face trademark liability in the United States."

25   *ZipStorm Inc. v. Seek Ltd.*, No. C24-1446-KKE, 2025 WL 1635234, at *4 (W.D. Wash. June 9,

26   2025).

27       As a threshold matter, CT argues that the court can only determine the existence of subject-

28   matter jurisdiction on the basis of the facts as they existed on the day the complaint was filed.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   ECF No. 53 at 11.  The cases that CT cites supporting the premise that jurisdiction must exist at

2   the time of filing, however, pertain to the assertion of diversity jurisdiction, *Grupo Dataflux v.*

3   *Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572 (2004); personal jurisdiction, *Minneapolis & St. L. R.*

4   *Co. v. Peoria & P. U. Ry. Co.,* 270 U.S. 580, 586 (1926); or standing, *Davis v. Fed. Election*

5   *Comm'n*, 554 U.S. 724 (2008).  In such cases, "the jurisdiction of the court depends upon the state

6   of things at the time of the action brought."  *Grupo Dataflux*, 541 U.S. at 570 (quoting *Mollan v.*

7   *Torrance,* 9 Wheat. 537, 539, 6 L. Ed. 154 (1824)).  By contrast, "[t]he rule that jurisdiction is

8   assessed at the time of the filing of the complaint has been applied only rarely to federal question

9   cases." *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492,

10  1503 (3d Cir. 1996).  Further, cases in the Ninth Circuit have made clear that events that occur

11  after the filing of a lawsuit for declaratory judgement act suit can be relevant to whether there is

12  subject matter jurisdiction.  *See Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*,

13  655 F.2d 938, 945 (9th Cir. 1981) (considering both the withdrawal of a threat following plaintiff

14  filing a declaratory judgement suit and the absence of any covenant not to sue from the defendants

15  in determining whether there is subject matter jurisdiction in a patent action).  The Court will

16  therefore consider events occurring after the filing of the complaint, such as CT's February 2025

17  request that Cohesity pay CT money in exchange for a covenant not to sue for infringement in the

18  United States.[3]

19      CT's actions taken as a whole are sufficient to establish that Cohesity experienced a

20  reasonable apprehension of suit.  When CT proposed that Cohesity take a license to CT's

21  trademark, it stated that if Cohesity refused "[t]he fallout would inevitably not be contained

22  domestically."  While CT argues that this meant only that "Canadian infringement would impact

23  Cohesity in a way that might require regulatory or other reporting in the United States," ECF No.

24  37-3 at 10, that is not the only plausible reading of the communication.  Similarly, while CT

25  argues that "[c]orrespondence with third parties was carefully limited to actions causing or

26  comprising activities in Canada. No U.S. trademark rights, whether via a U.S. registered mark, via

27

28  [3] The Court also finds that Cohesity can establish the presence of an actual case or controversy based solely on events occurring before the date of the complaint.

common law rights, or otherwise, were asserted," ECF No. 37-1 at 14 (citation omitted), that is not the way some sophisticated third parties such as Facebook read the communications.  Finally, CT had not only filed a trademark application in the United States shortly after communicating with Cohesity, but has since obtained a United States trademark and asserted it against Cohesity.

This is more than sufficient to establish reasonable apprehension.  The court in *Freecyclesunnyvale v. Freecycle Network, Inc.*, for example, found that two emails that threatened to report the plaintiff to Yahoo while invoking the language of trademark infringement sufficed to establish reasonable apprehension.  Case No. 06-cv-00324-CW, 2006 WL 870688, at *4 (N.D. Cal. Apr. 4, 2006).  While the takedown notices submitted by CT generally mention the CT Canadian trademark registration, the fact that multiple third parties receiving the notices interpreted them as targeting content beyond Canada's boundaries show that Cohesity's belief that CT was targeting United States infringement was reasonable.  And CT's filing of a United States Trademark shortly after initiating communications with Cohesity "clearly caused Plaintiffs to have reasonable apprehension of being sued."  *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1191 (D. Nev. 2003) (where the Court found that a trademark application filed after outreach regarding potential infringement constituted grounds for reasonable apprehension of suit).  Cohesity was also reasonable in inferring from the Canadian litigation that if a trademark were to be issued in the United States, Cohesity would be subject to suit for the same mark here.  *See Nike, Inc. v. Adidas Am., Inc.*, 2005 WL 2757293, at *3 (D. Or. Oct 24, 2005) (holding that trademark infringement suit in Europe along with threats by defendants regarding U.S. conduct constituted sufficient grounds for reasonable apprehension of suit here).

In a Declaratory Judgment Act case, having established that there is a case or controversy over which the Court has jurisdiction, the Court "must decide whether to exercise its jurisdiction by analyzing the factors set out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), and its progeny."  *Coheso, Inc. v. Can't Live Without It, LLC*, No. 17-CV-03381-LHK, 2017 WL 10434396, at *7 (N.D. Cal. Dec. 18, 2017) (citation omitted).  The non-exclusive *Brillhart* factors state that, "(1) the district court should avoid needless determination of state law issues; (2) it should discourage litigants from filing declaratory actions as a means of forum shopping; and (3)

1   it should avoid duplicative litigation." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th

2   Cir. 2005) (citation modified).

3        None of these factors counsel against the exercise of jurisdiction here.  No state court

4   claims are involved here, as the case concerns only United States federal trademark law.  There is

5   no indication of forum-shopping, as Cohesity is based in the Northern District of California.

6   *Coheso*, 2017 WL 10434396, at *8.  Finally, there is no risk of duplicative litigation as this is the

7   only case pertaining to the parties' United States trademark rights, which the Canadian courts

8   cannot adjudicate.

9        None of the *Brillhart* factors counsel against the exercise of jurisdiction, and the Court

10   accordingly elects to exercise its jurisdiction.

11   **B.       Motion to Dismiss for Lack of Personal Jurisdiction**

12        The Court next examines whether the Court has personal jurisdiction over CT.  "In

13   opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the

14   burden of establishing that jurisdiction is proper." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647

15   F.3d 1218, 1223 (9th Cir. 2011) (citation omitted).  Furthermore, "[w]here, as here, the

16   defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff

17   need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."

18   *Id.* (citation omitted).

19        Cohesity first argues that CT waived its personal jurisdiction defense by appearing in the

20   case to seek extensions, requesting a stay, and filing a case management statement prior to filing a

21   motion to dismiss on personal jurisdiction grounds.  ECF No. 48 at 17.  They argue that these

22   actions constituted a voluntary "general appearance." *Id.* (first citing *Benny v. Pipes*, 799 F.2d

23   489, 492 (9th Cir. 1986); then citing *Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011)).

24   Cohesity's authorities are distinguishable and the argument is unpersuasive.  In *Benny*, defendants

25   filed three motions for extension of time, actions the court found "*insufficient* to constitute a

26   general appearance."  799 F.2d at 493 (emphasis added).  In *Gerber*, unlike here, "Defendants

27   retained an attorney who entered a general appearance with the district court on Defendants'

28   behalf."  649 F.3d at 516.  Unlike in either of these cases, CT raised in its first case management

United States District Court
Northern District of California

1   statement that it intended to challenge personal jurisdiction.  ECF No. 28 at 2; *see generally*

2   *Benny*, 799 F.2d at 493 (noting that defendants' third motion for extension "specifically reserved

3   the defense" of lack of jurisdiction).  Therefore, the Court finds that these actions did not,

4   individually or collectively, constitute a general appearance and that CT did not waive its personal

5   jurisdiction defense.

6          Cohesity next argues that the Court has specific jurisdiction over CT.[4]  ECF No. 48 at 17.

7   For specific jurisdiction over a non-resident defendant, the Ninth Circuit has a three-part test:

8              (1) the defendant must either purposefully direct his activities toward
               the forum or purposefully avail himself of the privileges of
9              conducting activities in the forum;
               (2) the claim must be one which arises out of or relates to the
10             defendant's forum-related activities;
               and (3) the exercise of jurisdiction must comport with fair play and
11             substantial justice, i.e. it must be reasonable.

12  *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023), *cert denied*, 144

13  S. Ct. 2561 (2024) (citation omitted).  The plaintiff bears the burden of proof on the first two

14  prongs.  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  If the plaintiff establishes

15  both prongs one and two, the defendant must come forward with a "compelling case" that the

16  exercise of jurisdiction would not be reasonable.  *Id.* (quoting *Schwarzenegger v. Fred Martin*

17  *Motor Co.,* 374 F.3d 797, 802 (9th Cir.2004)).  With regard to the first prong, courts "generally

18  apply the purposeful availment test when the underlying claims arise from a contract, and the

19  purposeful direction test when they arise from alleged tortious conduct."  *Morrill v. Scott Fin.*

20  *Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).  Because "[t]rademark infringement is treated as tort-

21  like for personal jurisdiction purposes," courts in the Ninth Circuit generally apply the purposeful

22  direction test "and ask whether [the defendant] has purposefully directed activities at the United

23  States."  *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021).  Under the "effects

24

_____

25  [4] Federal courts recognize two types of personal jurisdiction over a defendant: general and
    specific.  *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S.
26  255, 262 (2017) (citation omitted).  "A court with general jurisdiction may hear any claim against
    that defendant, even if all the incidents underlying the claim occurred in a different [s]tate."  *Id.*
27  (emphasis and citation omitted).  General jurisdiction arises "when [the defendant's] affiliations
    with the [s]tate are so 'continuous and systematic' as to render them essentially at home in the
28  forum [s]tate."  *Id.* (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95
    (1945)).  Cohesity does not argue that the Court has general jurisdiction over CT.

1    test," a defendant purposefully directs its activities toward the forum when the defendant has "(1)

2    committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

3    defendant knows is likely to be suffered in the forum state."  *Axiom Foods, Inc. v. Acerchem Int'l,*

4    *Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citation modified).

5           There is no dispute that CT's conduct was intentional.  *Id*. at 19.  Next, there is evidence

6    that CT expressly aimed its conduct at Cohesity, with the knowledge that Cohesity was based in

7    California.  The requirement for express aiming is satisfied when defendant "is alleged to have

8    engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of

9    the forum state."  *See Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1023 (N.D. Cal. 2015).  CT

10   sent several emails to Cohesity's United States counsel and employees regarding the purported

11   infringement and issued takedown notices to third parties regarding Cohesity's products, all with

12   the knowledge that Cohesity was based in California.  The Court has no difficulty finding that

13   CT's conduct was "expressly aimed" at California.  *Automattic*, 82 F. Supp 3d at 1024.

14          CT cites *Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme* for the proposition

15   that "[s]ending a cease-and-desist notice to a forum resident, without more, is insufficient to

16   establish purposeful direction."  ECF No. 37-1 at 19 (citing *Yahoo! Inc. v. La Ligue Contre le*

17   *Racisme et l'Antisémitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc)).  Here, however, CT's

18   conduct involved much more than a single letter.  CT communicated repeatedly with Cohesity's

19   counsel and submitted several takedown notices to California-based companies, like Apple and

20   Facebook.  That alone is sufficient to establish the express aiming requirement.  *See California*

21   *Beach Co., LLC v. Han Xian Du*, No. 19-CV-08426-YGR (LB), 2020 WL 6276987, at *3 (N.D.

22   Cal. Aug. 13, 2020) (finding that "the court has personal jurisdiction over the defendant, who

23   directed his activities here by submitting takedown notices in the Northern District of California"),

24   *report and recommendation adopted*, No. 4:19-CV-08426-YGR, 2020 WL 6271225 (N.D. Cal.

25   Oct. 26, 2020); *Amaretto Ranch Breedables v. Ozimals*, 2010 WL 5387774, at *1 (N.D. Cal. Dec.

26   21, 2010) (finding personal jurisdiction in California because "Defendant filed a DMCA

27   Takedown Notification with a California company").  While CT concedes that they sent trademark

28   notices to California-based entities, CT claims a finding of jurisdiction would be "absurd" since it

United States District Court
Northern District of California

1    was only requesting the removal of Canadian content.  ECF No. 53 at 17.  CT identifies no caselaw

2    in support of that proposition, and the Court notes that (1) many of the notices' recipients did not

3    interpret them as reaching only Canadian content and (2) the takedown notices followed other

4    conduct expressly aimed at California-based Cohesity.  Accordingly, the Court finds that

5    Cohesity's allegations satisfy the requirements for purposeful direction.  Cohesity's claims arise

6    out of or relate to CT's contacts with California because CT enforced its rights in California.  The

7    Court therefore finds that the second prong of the test for specific jurisdiction is also met.

8        CT argues that exercising jurisdiction would be unreasonable because of the substantial

9    burden on CT, the small interest that California has in a Canadian dispute, Plaintiff's interest in

10   obtaining convenient relief, availability of an adequate Canadian forum, and because

11   "[d]etermining Canadian trademark rights while a Canadian Federal Court case is pending on the

12   same matter is injurious to comity."  ECF No 37-1 at 18; *see also id.* at 20.

13       First, CT argues that litigating in California would impose a substantial burden upon it.  *Id.*

14   Although it would be expensive and inconvenient for CT to defend themselves in California, "this

15   factor is not dispositive."  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002).

16   "[M]odern advances in communications and transportation have significantly reduced the burden

17   of litigating in another country."  *Id.* (quoting *Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1199

18   (9th Cir.1988)).  Canada is the United States' immediate neighbor, and CT conducts its business in

19   the English language.  *See id.* ("Both Watts and Boenneken are able to speak, read, and write

20   English with ease.").  Second, California has a substantial commercial interest in the resolution of

21   a trademark dispute regarding the United States use of a mark by a company headquartered there.

22   *See Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1192 (9th Cir. 1988).[5]  Next, CT's

23   suggestion that the Canadian courts "can comprehensively decide the parties' rights with respect to

24   the 'Helios' mark" and that the United States lawsuit is "duplicative," ECF No. 37-1 at 21, is not

25   based in fact.  Cohesity has no way of vindicating its rights to the United States trademark in the

26   Canadian courts.  CT's argument that exercising jurisdiction here would implicate comity and

27

28   _____
     [5] CT also argues that its chief executive, "Mr. Warner[,] is unlikely to be able to travel to the
     United States."  ECF No. 37-1 at 14.  The Court finds the argument speculative.

*United States District Court*
*Northern District of California*

1    sovereignty concerns are also unavailing.  ECF No. 37-1 at 21–22.  The Court is exercising

2    jurisdiction over a United States trademark dispute, which does nothing to restrain the parallel

3    Canadian proceeding or the determination of the Canadian trademark rights.[6]

4         Having considered the relevant factors, the Court finds that it can exercise specific personal

5    jurisdiction over CT.

6         **C.      Motion to Dismiss for Improper Venue and Forum Non Conveniens**

7         Next, CT moves to dismiss the case on forum non conveniens grounds.[7]

8         It argues that there is an adequate foreign forum; that it will be difficult for CT's founder,

9    Warner, to travel to the United States; and that remote testimony would be inadequate.  ECF No.

10   37-1 at 23.

11        A district court has discretion to decline to exercise jurisdiction on forum non conveniens

12   grounds in a case where litigation in a foreign forum would be more convenient for the parties."

13

14   ───────────────

15   [6] CT also requests in passing that the Court enter a stay, ECF No. 37-1 at 6.  It cites *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) in support of its request but otherwise makes no supporting argument.

16   CT's request is best characterized as a request for stay under the doctrine of abstention.  "The key to this inquiry is determining whether 'exceptional circumstances' warrant federal abstention where there is a parallel proceeding in another forum."  *Updateme Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2017 WL 5665669, at *5 (N.D. Cal. Nov. 27, 2017) (citation omitted).  In the context of parallel foreign proceedings, a court should weigh '(1) whether either court has assumed jurisdiction over a res, (2) the relative convenience of the forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) what law controls, and (6) whether the foreign proceeding is adequate to protect the parties' rights.' *Id.* (quoting *Farhang v. Indian Inst. of Tech., Kharagpur*, No. 08-02658 RMW, 2010 WL 2228936, at *2 (N.D. Cal. June 1, 2010)).  "However, if there is substantial doubt as to whether the foreign proceeding will resolve the federal action, there is no need to even undertake this multi-factor analysis." *Id.* (citation omitted).  Here, it is not disputed that the Canadian action will not resolve the United States proceeding.  Thus, there are no grounds for a stay.

23   *Wilton* does not change this analysis.  In that case, a federal lawsuit and a parallel state court proceeding both involved the same question of whether an insured's claim was covered by its liability insurance policy.  Thus, there was an interest in avoiding duplicative proceedings that is not present here.

26   [7] CT also moves to dismiss for improper venue pursuant to Rule 12(b)(3), but makes no argument in support of that motion.  ECF No. 37-1 at 23.  In any event, venue is proper.  Under 28 U.S.C. § 1391(b)(1), venue is proper in any district where the defendant "resides," which, according to § 1391(c)(2), is "any judicial district" where the defendant entity "is subject to the court's personal jurisdiction with respect to the civil action in question."  Moreover, foreign residents "may be sued in any judicial district." *Id.* § 1391(c)(3).

1    *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). "In dismissing an action on

2    forum non conveniens grounds the court must examine: (1) whether an adequate alternative forum

3    exists, and (2) whether the balance of private and public interest factors favors dismissal." *Id.*

4    "The private interest factors include: (1) relative ease of access to sources of proof; (2) the

5    availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining

6    attendance of willing witnesses; (3) possibility of viewing subject premises; (4) all other factors

7    that render trial of the case expeditious and inexpensive." *Creative Tech., Ltd. v. Aztech Sys. Pte.,*

8    *Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995) (quotation omitted). "The public interest factors include:

9    (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the

10   people of a community that has no relation to the litigation; (3) local interest in having localized

11   controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar

12   with the law that governs the action: (5) the avoidance of unnecessary problems in conflicts of

13   law." *Id.* at 703–04.

14            The defendant's "showing must overcome the great deference . . . due plaintiffs because a

15   showing of convenience by a party who has sued in his home forum will usually outweigh the

16   inconvenience the defendant may have shown." *Loya v. Starwood Hotels & Resorts Worldwide,*

17   *Inc.*, 583 F.3d 656, 664 (9th Cir. 2009) (citation and quotation omitted). "The doctrine of forum

18   non conveniens is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer

19   of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*,

20   643 F.3d 1216, 1224 (9th Cir. 2011) (quotation marks in original).

21            CT's argument is not persuasive. First, contrary to CT's contention, Canada is not an

22   adequate forum for the resolution of whether Cohesity has or has not infringed the HELIOS mark

23   in the United States. Courts have declined to dismiss a case on forum non conveniens grounds

24   where the defendant had "not shown that a Canadian court would be an adequate alternative

25   forum" because "[d]efendant failed to explain how those laws would provide a remedy that would

26   be an adequate alternative to remedies available under the Lanham Act[.]" *Life Alert Emergency*

27   *Response, Inc. v. Lifealert Sec., Inc.*, PLAX, 2008 WL 5412431, at *7 (C.D. Cal. Dec. 29, 2008).

28   This by itself disposes of CT's forum non conveniens argument.

United States District Court
Northern District of California

16

1    Next, even if Canada did offer an adequate forum, the private and public interest factors do

2    not counsel in favor of dismissal.  CT focuses on only one of the public factors, arguing that trying

3    this case in the Northern District of California would burden local jurors.  ECF No. 37-1 at 25.

4    This factor standing does not weigh in favor of dismissal, because the local community does have

5    a relation to the litigation:  Cohesity is located in this District.  And other public factors weigh

6    against dismissal, including that this Court is familiar with U.S. trademark law and there is no

7    conflict of law problem since trademark rights are territorial.  *See, e.g.*, *Updateme*, 2017 WL

8    5665669, at *6 (declining to abstain from U.S. trademark infringement claims where the parallel

9    "German proceeding only addresses the application of German law").

10    CT's arguments regarding the private interest factors fare no better.  CT focuses on

11    Warner's generalized fears about travelling to the United States and its contention that video

12    testimony would be inadequate.  ECF No. 37-1 at 23–26.  The Court finds Warner's fears about

13    travelling to the United States to be speculative.  Furthermore, regardless of the merits of Warner's

14    fears of travelling to the United States, contemporaneous video testimony will sufficiently protect

15    CT's due process rights at trial.  *See e.g. Aoki v. Gilbert*, No. 2:11-cv-02797, 2019 WL 1243719,

16    at *1 (E.D. Cal. Mar. 18, 2019) ("Because a witness testifying by video is observed directly with

17    little, if any delay in transmission . . .courts have found that video testimony can sufficiently

18    enable cross-examination and credibility determinations, as well as preserve the overall integrity

19    of the proceedings." *Aoki v. Gilbert*, No. 2:11-cv-02797, 2019 WL 1243719, at *1 (E.D. Cal.

20    Mar. 18, 2019) (quotation omitted).  *See also Cruz v. Bondi*, 2025 WL 2026174, at *8 (9th Cir.

21    July 21, 2025).  The cases that CT cites regarding the insufficiency of testimony that is not

22    provided in live court predate the modern technological advances of live video testimony and are

23    not persuasive.  ECF No. 37-1 at 19–20 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947);

24    *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).[8]

25

26

27    [8] In passing, CT moves for a stay on the same basis as it moves for dismissal on forum non
conveniens grounds.  *See* ECF No. 37-1 at 6, 21, 22, 30.  It makes no independent argument for

28    that relief and the Court denies the request for the reasons it denies CT's forum non conveniens
motion.

United States District Court
Northern District of California

**D.      Motion to Dismiss for Failure to State a Claim**

CT moves next to dismiss the complaint for failure to comply with Rule 9(b)'s heightened pleading standards.  It argues that Cohesity's complaint contains several paragraphs alleging that CT made false allegations of infringement, which should be subject to Rule 9(b).

"In alleging fraud . . . a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

There are two instances in which Rule 9(b) applies to allegations that the defendant has engaged in fraudulent conduct, even when fraud is not an essential element of the claim.

> In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  The other circumstance is where a plaintiff does not allege a unified course of fraudulent conduct, "but rather . . . allege[s] some fraudulent and some non-fraudulent conduct."  *Id.* at 1104.  "In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements."  *Id.*

CT cites no authority that allegations that a party is falsely alleging that another party is using its trademark constitutes "fraudulent conduct" for purposes of Rule 9(b).  It also cites no authority holding that Rule 9(b) applies to trademark claims.  To the contrary, every case the Court has located on the subject has declined to apply Rule 9(b) to such claims.  *See Santander Consumer USA Inc. v. Drive.Car LLC*, No. 3:23-CV-00288-SLG, 2024 WL 4880668, at *7 (D. Alaska Nov. 25, 2024) (noting that "[c]ourts have not applied Rule 9(b) in cases in which the plaintiff's complaint alleged trademark infringement"); *Lloyds Plumbing, Inc. v. Dutton Plumbing, Inc.*, No. CV 18-2353-GW(JCX), 2018 WL 6164327, at *3 (C.D. Cal. Aug. 20, 2018) ("The Court concludes, however, that LP's trademark infringement claim is *not* grounded in allegations of

18

1    fraud or misrepresentation, and so it declines to apply the heightened standard to that claim.");

2    *Rolex Watch U.S.A., Inc. v. Agarwal*, No. CV 12-06400 MMM (MRWX), 2012 WL 12886444, at

3    *3 (C.D. Cal. Dec. 17, 2012) ("[Defendants] cite no authority, however, for the proposition that

4    Rule 9(b) applies to trademark infringement or counterfeiting claims.  The court, moreover, was

5    unable to find any case in which the heightened standard was applied to such claims.").

6         Accordingly, the Court denies the motion to dismiss Cohesity's claims for failure to

7    comply with Rule 9(b).

8         **E.     Motion for a More Definite Statement**

9         In the alternative to its motion to dismiss, CT requests the Court to order a more definite

10   statement under Rule 12(e).

11        Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more

12   definite statement before responding to the pleading when that pleading "is so vague or ambiguous

13   that a party cannot reasonably be required to frame a responsive pleading[.]"  Fed. R. Civ. P.

14   12(e).  The motion is "ordinarily restricted to situations where a pleading suffers from

15   unintelligibility rather than want of detail, and if the requirements of the general rule as to

16   pleadings are satisfied and the opposing party is fairly notified of the nature of the claim such

17   motion is inappropriate."  *Sheffield v. Orius Corp.,* 211 F.R.D. 411, 414–15 (D.Or.2002) (quoting

18   *Tilley v. Allstate Ins. Co.,* 40 F.Supp.2d 809, 814 (S.D.W.Va.1999)).  "Rule 12(e) motions are

19   viewed with disfavor and are rarely granted."  *Ascension Arizona v. Amerisure Ins. Co.*, No. 21-

20   CV-0434-TUCJASBGM, 2022 WL 4484356, at *1 (D. Ariz. Sept. 27, 2022).

21        "Mere vagueness is generally not grounds for dismissal."  *Daimler AG v. A-Z Wheels LLC*,

22   No. 16-CV-875-JLS (MDD), 2017 WL 9854427, at *3 (S.D. Cal. Nov. 27, 2017) (citation

23   omitted).  "Thus, a motion for a more definite statement should not be granted unless a defendant

24   'literally cannot frame a responsive pleading.'"  *Id.* (quoting *Bureerong v. Uvawas*, 992 F. Supp.

25   1450, 1461 (C.D. Cal. 1996)).  "Further, where the information sought by the moving party is

26   available and/or properly sought through discovery the motion should be denied."  *Id.* (citation

27   and quotation omitted).

28        CT fails to come close to establishing the need for a more definite statement.  Indeed, the

United States District Court
Northern District of California

19

Warner declaration submitted with its motion shows that it knows precisely what Cohesity is alleging and what the basis for its allegations is. To the extent there is any lack of clarity, it can be addressed with discovery. Accordingly, CT's motion for a more definite statement is denied.

**CONCLUSION**

For the foregoing reasons, the Court denies CT's motion to dismiss, for more definite statement, for a stay, or to strike.

**IT IS SO ORDERED.**

Dated: February 2, 2026



JON S. TIGAR
United States District Judge
